# Spigner *v.* State.

## *Indictment for Burglary.*

1. *Charge that the jury should acquit on the evidence ; when not error to re-fuse.*—It is not error to refuse to instruct the jury that the prisoner is entitled to an acquittal on the evidence, unless it is of so weak and indeterminate a character that the presiding judge would feel it his duty to set aside a verdict of guilt based on it.

2. *Question to prisoner, "whether he has anything to say," &c.; recitals of the record; when case not reversed.*—Before sentence, on conviction of felony, the prisoner must be asked if he has anything to say why the sentence of the law should not be pronounced upon him. The main purpose of the inquiry is to allow the prisoner an opportunity to make any motion which will pre-vent judgment; hence, where the record shows that after verdict, the defend-ant moved in arrest of judgment and for a new trial, such recital shows that the defendant got the benefit of the rule, and that the question must have been, in substance, propounded to him.

APPEAL from the Circuit Court of Chilton.

Tried before the Hon. JOHN HENDERSON.

The following proceedings were had on the trial of this cause :

Issue was joined on the plea of *not guilty.* George Payne, a witness for the State, testified that about the 19th day of December, 1877, he retired to bed about 9 o'clock at night ; that he had about fifty dollars in his pocket ; that defendant was in his employ ; that before retiring he was exhibiting an old Mexican dollar, that was with the money, to his sister-in-law, who was living with witness, in full view from a room in which the defendant then was ; that there were several rooms in the house ; that when witness retired he put his pantaloons (in the pocket of which was the money) near the window ; that his custom was to lock the outside doors of the house, but he could not say that the outside doors were locked that night, but that the doors and windows of the room in which he slept were closed before he went to bed ; that when he got up the next morning, all the money was gone from his pantaloons pocket except the Mexican dollar ; early in the morning he informed his sister-in-law—no one else—of the loss of his money ; a few days afterward, one B. L. Tarver returned witness some money, which Tarver said he had gotten from persons who had gotten it from defend-ant, but the witness could not identify any of the bills as the money he had lost; that the house in which he was living and in which he lost his money, was in Chilton county; that

[Spigner v. The State.]

defendant had been in the employ of witness some time, and was well acquainted with the house, and while so employed he had paid defendant only $5. Witness further testified that his wife and sister-in-law staid in the house that night; that he saw no signs of his house having been broken open and entered, and he could not say whether his house had been broken into and entered.

B. L. Tarver, a witness for the State, testified that some days after the money was said to have been taken or lost, he arrested the defendant and carried him to the store of one Captain Norton, and asked Norton, in defendant's presence, if defendant gave Norton any money, and Norton gave witness a ten dollar bill, which he then said he got from defendant. Witness asked Norton if he had found any more money. He said he had found five dollars more, which he had given to Tom Spigner, a brother of defendant. Witness then went with defendant to Tom Spigner's, who, in defendant's presence, gave witness a five dollar bill that Tom Spigner said defendant had given him. Witness then said to defendant, "You took more money than this." Defendant replied that he had not taken any money, but had found fifteen dollars.

One Simmons, another witness for the State, testified that in December, 1877, he lived on an adjoining lot to George Paine's, and that defendant was living with Paine; that very early one morning, a day or two before he heard of the loss of Paine's money, he saw defendant on Paine's lot, when defendant asked witness if he had heard of the "Captain's great loss." Witness said he had not. Defendant said that the Captain had lost about forty-two dollars, and asked witness what he would do with the money if he should find it; would he (witness) give it to the Captain? Witness said he *would*—but he thought the Captain ought to give him the two dollars for finding it. Defendant then said that if *he* found it he would keep it.

Tom Spigner, another witness for the State, testified that a short time before he heard of the loss of money by Captain Paine, the defendant let witness have a five dollar bill; that defendant had other paper money at the time, but witness did not know the amount or number, or denomination of the bills; that defendant had it rolled up in his hand.

Defendant was about fifteen years old.

The foregoing is all the evidence set out in the bill of exceptions.

The defendant asked the court, in writing, to charge the jury, "That if they believe the evidence, they must find the

[Spigner v. The State.]

defendant not guilty ;" which charge the court refused, and defendant's counsel excepted.

The jury brought in a verdict of guilty. The defendant then moved in arrest of judgment, and for a new trial, on the ground that the verdict was contrary to the law and the evidence, which motions the court overruled, and defendant excepted.

The court sentenced the prisoner to the penitentiary for two years. The judgment entry does not recite that the defendant was asked, if he had any thing to say whether sontence of the court should not be pronounced, but sets out the other proceedings and motions made by defendant.

Defendant.appeals on the record.

Wm. A: Collier, for appellant.—1. The record does not affirmatively show that before sentence was pronounced the defendant was asked, if he had any thing to say why the judgment of the law should not be pronounced against him. To sustain a conviction for felony, this must so appear from the record.—*Crim v. State*, 43 Ala. 53.

2. The record does not affirmatively show that the prisoner was personally present in court when sentence was pronounced upon him. This the record must do upon conviction of felony.—*Peters v. State*, 39 Ala. 681.

3. The *corpus delicti* not having been proven, as charged in the indictment, the conviction is illegal.—Stark. Ev. 9th ed. § 862.

4. Even if the *corpus delicti* be established, the State having failed to connect the defendant therewith, the conviction is erroneous.—Greenleaf's Ev. 7th ed. § 30.

5. The State not having proved, beyond a reasonable doubt, that the defendant was guilty as charged in the indictment, the defendant should have been acquitted.—*Murler v. State*, 2 Ala. 43.

6. This being a clear case, and one in which the jury could not legally bring in a verdict of guilty, the charge asked and refused should have been given.—*Sanders v. State*, present volume.

John W. A. Sanford, Attorney-General, *contra.*—1. It does not appear that before sentence was pronounced, the prisoner was asked whether or not he had any thing to say "in bar or preclusion thereof."—Perry's case and Crim's case, 43 Ala. pp. 21 and 53, hold that such an omission is fatal to an affirmance of the judgment. But in Ely and Aaron's case, 39 Ala. 684—and Taylor's case, 42 Ala. 529—it was held that, unless the record affirmatively showed the question was not

asked, the court would presume that it was.—*Paris v. State*, 36 Ala. 632 ; Ben's case, 22 Ala. 9 ; William's case, 3 Stew. 454 ; Harrington's case, 36 Ala. 236.

2. The record shows that the prisoner was in court when the trial was had and the sentence pronounced. The jury alone could determine the sufficiency and credibility of the evidence. If the testimony convinced the jury that the money owned by Payne had been stolen by the accused— unless some misconduct on-the part of the jurors were shown— the court would not disturb the verdict. The motion for a new trial was properly overruled in the court below, and its action is not reversable here.

STONE, J.—The charge asked should not have been given. The testimony was not of so weak and indeterminate a character, as to require the court to pronounce its insufficiency as matter of law. Though circumstantial in all that tended to connect the defendant with the offense, it was sufficient to go before the jury to be weighed by them. In no case should the presiding judge charge on the effect of the evidence, and pronounce it insufficient to support a verdict of guilty, unless, on conviction on such testimony, he would feel it to be his duty to set aside the verdict, as not warranted by the evidence. Such is not the case in this record.

2. There was a rule of the common law, that before sentence, on a conviction of felony, the prisoner must be interrogated by the court, whether he has any thing to say why the sentence of the law should not be pronounced upon him. 1 Bish. Cr. Proc. § 1118. And this court, in *Crim v. State*, 43 Ala. 53, announced that doctrine. We have no desire to re-examine the question at this time. The main purpose of the inquiry and the rule is, that the prisoner, before sentence, may have afforded to him the opportunity to make any motion which will prevent judgment. The record imforms us that after the coming in of the verdict, the defendant made two motions : one in arrest of judgment, and the other for a new trial, which were severally overruled by the court. These are the motions most usually made after verdict, and we think the recital that these motions were made, proves that the usual question must have been in substance propounded, and that, in fact, the prisoner had accorded to him substantially, all the rule was intended to secure. It would look like child's play to remand this cause, when the only effect could be to propound the question to the prisoner, receive his answer that he had nothing further to offer, and then pronounce the sentence of the law on the verdict of guilty

[Griggs v. The State.]

heretofore rendered by the jury, and which is free from error. *Burch v. State*, 55 Ala. 136.

Affirmed.

