THE STATE OF OHIO, APPELLEE, *v.* BAKER, APPELLANT.

(No. 196—Decided February 27, 1960.)

*Mr. James Shaw*, for appellee.
*Mr. James N. Baker, in propria persona.*

GUERNSEY, J. This cause is in this court on the motion of James N. Baker, the defendant in the lower court, for leave to appeal from a judgment of conviction and sentence entered by the trial court on March 25, 1958. The defendant did not perfect an appeal as of right from said judgment but, as a basis

for the granting of his motion for leave to appeal, now makes five claims of error committed by the trial court, specifically:

"1. Applicant was not represented by a lawyer nor was he at any time advised of his constitutional rights to be represented by a lawyer.

"2. Applicant did not waive a jury trial, nor did he consent to be tried or have judgment passed upon him without the intervention of a jury, either in writing or orally.

"3. Applicant did not enter a plea of guilty as charged nor did any lawyer representing this applicant enter such a plea in his behalf.

"4. Applicant avers that he was induced to stand mute by reason of misapprehension of facts revealed to him by the sheriff and prosecutor of said county.

"5. Applicant was not advised of his legal rights at any time by the judge of said county, nor was he inquired of as to anything he, this applicant, had to say before sentence was passed upon him."

Upon the hearing of the motion, the defendant and the state submitted evidence bearing on these claims.

In passing upon defendant's motion, we are mindful of the statements of Judge Hornbeck in his opinion in the case of State v. Kramer, 70 Ohio Law Abs., 97, at page 98, with which statements we agree:

"This court has the widest discretion as to the propriety of granting a leave to appeal. Judge Ross, in his opinion in State v. Edwards, 157 Ohio St., 181, said

" 'The Court of Appeals is left free to grant the appeal or to refuse it. It may be seriously doubted whether under such authority the conclusion of the Court of Appeals can ever be questioned.'

"It is the policy of this court upon such applications for leave to appeal to exercise discretion in the light of the facts appearing in each application. State v. McGahan, 86 Ohio App., 283.

"As a general rule, before a defendant can secure the right of leave to appeal from judgment and sentence there must appear some substantial reason for failure to prosecute the appeal as a matter of right and either, probable error of

law in the trial of his case, or, facts, which, if true, overcome the presumption of the regularity and validity of the proceedings under which he was sentenced. That is to say, that upon the motion for leave to appeal there is a showing of probability of a miscarriage of justice. *State* v. *McGahan, supra.*"

It is undisputed that on March 25, 1958, the following proceedings occurred before the trial court:

"Mr. Shaw (prosecuting attorney): May it please the court, your Honor, we are here this morning on case number 4230 entitled State of Ohio versus James Newton Baker, who was indicted by the re-called January, 1958, term of the Auglaize County grand jury, for armed robbery of the First National Bank, New Bremen, in Auglaize County, Ohio. At this time, I would ask that the indictment be read to the accused, unless he wishes to waive and enter a plea.

"Thereupon a conference ensued between counsel for the plaintiff and counsel for the defendant.

"Mr. Shaw (to the court and court stenographer): First, we have case 4244, entitled State of Ohio versus James Newton Baker, who was indicted for malicious entry in an financial institution, which we are asking the court at this time to nolle, and case number 4245, being entitled the State of Ohio versus Bernard Keith Gillespie, for malicious entry of a financial institution, which we are requesting the court at this time to nolle.

"The Court: It may be done.

"Mr. Myers: If the court please, at this time, in view of the motion that was just made to the court, in behalf of the state, which motion was granted by the court, we will waive all of the statutory requirements as to the reading of the indictment in case number 4230, and will enter a plea of guilty.

"The Court: You enter a plea of guilty. What have you to say, Mr. Prosecutor?

"Mr. Shaw: Your Honor, the statute under which the indictment was returned, '2901.13, armed robbery, no person, while armed with a pistol, knife, or other dangerous weapon, by force or violence, or by putting in fear, shall steal from the person of another anything of value. Whoever violates this section is guilty of armed robbery, and shall be imprisoned **not less than ten nor more than twenty-five years.**'

"The Court: Do you have anything to say?

"Mr. Myers: Nothing to say, your Honor.

"The Court: Well, then, the sentence of this court will be that he be confined to the penitentiary from ten to twenty-five years. Pay the costs of prosecution."

It is also undisputed that during these proceedings the defendant was sitting in the courtroom at the counsel table where Myers sat, and that Myers was attorney for Bernard Keith Gillespie, sitting at the same table, an alleged accomplice of defendant.

It was further undisputed that several days before arraignment, and at defendant's request, Myers had been instrumental in obtaining defendant's release from custody on bail, and that after conviction and sentence and under date of June 4, 1958, defendant wrote and mailed the following letter to Myers:

"Since I haven't seen or heard from you for some time, I thought I would write and make the following suggestion.

"You will remember that Messrs. Shaw and Davison promised me that I would serve a maximum of four years and on that basis I signed a statement. After arriving here, I was stunned to learn that I will not even be eligible for a parole until six years and four months after my arrival date, and then parole is far from certain.

"I am not naive and would naturally expect a certain amount of subterfuge by authorities to aid them in *solving* a case, but surely after the case was solved, I thought that I could rely on their word. I still feel certain that they did not realize the staggering amount of time that this charge carried. Considering that I co-operated in every way and that firm representations regarding my sentence were made by the prosecuting attorney and the sheriff, I believe that it would be possible for me to be recalled to answer to a lesser charge, possibly unarmed robbery.

"As you know, the court has jurisdiction and the right to change a charge for ninety days after the original sentence, and this period expires on the 24th of June. Under the circumstances, I hope that you will give this matter your immediate attention (I have the feeling that Shaw and Davison will go along with this).

"I appreciate your continued interest and all that you have done for me in the past.

"Please let me have some word just as soon as possible."

Myers testified on the hearing of this motion that he considered himself to be defendant's attorney at the time of the arraignment and sentence and had advised and counseled him with reference to the offenses for which defendant had been indicted, although at no time had defendant specifically said, "I want you to be my attorney" or "I want you to represent me." On the other hand, defendant claimed that he had never asked nor authorized Myers to be his attorney at the arraignment and sentence, and that, although he was present in the courtroom and heard everything that was said, he was confused and did not understand the significance of the proceedings.

Sheriff Barber, the sheriff of the county adjoining that in which defendant was indicted and tried, testified that he had told defendant that he would be eligible for consideration for parole in less than six years and four months; that in doing so he had been under a misapprehension in that defendant was more than thirty years of age whereas the earlier eligibility for parole consideration pertained to men of less than thirty years of age. Sheriff Davison, the sheriff of the county in which defendant was indicted and tried, testified to the effect that, notwithstanding any other discussion as to earlier eligibility for parole, Mr. Shaw, the prosecutor, had made inquiry of appropriate state officials and had advised defendant before arraignment that the earliest eligibility would be six years and four months. This inquiry and advice were also verified by the testimony of Shaw and Myers. There was no evidence of any promises or agreements, except as to the agreement to nolle the count of malicious entry of a financial institution prior to defendant's plea on the charge of armed robbery.

As hereinbefore appears (*State* v. *Kramer, supra*), we are not concerned in this hearing as to whether error was *actually* committed but as to whether there was a probable error of law, or, in the alternative, as to whether facts appear, which if true, overcome the presumption of regularity and validity of the proceedings under which defendant was sentenced.

In the event that defendant was represented by counsel at

arraignment and sentence he cannot rightfully complain, as he does in his first claim of error, that he was not advised of his constitutional right to be represented by a lawyer. If he was represented by Myers as counsel, then his plea of guilty was properly entered for him and he cannot with merit claim, as he does in his second claim of error, that he was deprived of a jury trial. If he was represented by Myers, then the record shows that a plea of guilty was entered in defendant's behalf, notwithstanding defendant's third claim of error. And even if the evidence showed, which it does not, that at the time of the arraignment and sentence defendant had been misinformed by people other than his counsel as to his right for parole, if he had counsel he would have the right and opportunity to consult with counsel in this respect, and, in the absence of direct evidence to the contrary, it may be presumed that he was not misinformed by counsel.

At the time of the arraignment and sentence, the defendant was present in the courtroom. He could hear and observe everything which then transpired, and, by remaining mute, he acquiesced in everything which Myers then did or could do in his purported capacity as defendant's attorney. The defendant sought and used the services of Myers to obtain release on bail several days before the arraignment and sentence. The entire purport of the letter written to Myers by the defendant on June 4, 1958, hereinbefore quoted, was that Myers had served him in the past, could be expected to recall representations as to maximum time to be served, and was asked to further serve defendant by obtaining a change of charge and sentence. In view of such facts, this court can conclude only that the attorney-client relationship existed between Myers and the defendant at least several days before, and to and including the time of the arraignment and sentence, and that there is no probability that the trial court committed error, as claimed by the defendant in his first four claims of error. Nor, with respect to said relationship at such times, do there exist facts which, if true, overcome the presumption of the regularity and validity of the proceedings under which defendant was sentenced.

Defendant's fifth claim of error is directed to the procedure

for sentence prescribed by Section 2947.05 of the Revised Code:

"Before sentence is pronounced, the defendant must be informed by the court of the verdict of the jury, or the finding of the court, and asked *whether he has anything to say as to why judgment should not be pronounced against him.*" (Emphasis added.)

The transcript of the proceedings in the trial court reveals that before pronouncing the judgment of sentence the trial court asked: "Do you have anything to say?" It is not apparent to whom this question was directed, but by the fact that it was answered by Myers the inference is that it was directed to him and not to the defendant. In any event, the question did not inquire of the defendant whether he had anything to say "*as to why judgment should not be pronounced against him.*"

The Supreme Court held in the case of *Silsby* v. *State,* 119 Ohio St., 314:

"1. The requirements of Section 13694, General Code [Section 2947.05, Revised Code], impose a mandatory duty upon a trial judge to ask an accused person whether he has anything to say why judgment should not be pronounced against him.

"2. Where that duty has not been discharged by the court and error is prosecuted therefrom and a court of review finds no other error in the record, the judgment should be reversed and the cause remanded to the trial court for the sole purpose of resentence."

On the evidence adduced at the hearing on defendant's motion for leave to appeal, we conclude that a probable error of law occurred in the trial of defendant's case by the trial court not asking the defendant whether he had anything to say as to why judgment should not be pronounced against him, and that by reason of such probable error the motion of defendant for leave to appeal should be sustained.

In arriving at this conclusion, the majority of the court is not indulging in any presumptions in favor of or against the judgment of the lower court, for the record is clear and unambiguous that the trial court did *not* carry out the mandatory duty prescribed by law as construed and determined by the Supreme Court, and this court is by law bound by the decision

of the Supreme Court in this respect. Nor will the majority of this court label our conclusion as a Pyrrhic victory for the defendant and for such reason deny to him the benefits of laws adopted for his protection. We feel that he should be heard on appeal and we will not invade the discretion of the trial court by guessing or suggesting what action the trial court might take in the event the defendant obtains a reversal of the judgment of the trial court and the cause is remanded for the sole purpose of resentence.

In sustaining this motion we are fully aware of the additional requirement stated in the case of *State* v. *Kramer, supra,* that "as a general rule, before a defendant can secure the right of leave to appeal from judgment and sentence there must appear some substantial reason for failure to prosecute the appeal as a matter of right." In our opinion, defendant met this requirement by demonstrating that he has had to rely on his personal ability and experience, or lack thereof, in effecting his motion for leave to appeal, and, due to his lack of legal training and experience, it appears doubtful that in the limited time in which an appeal as of right must be perfected he could have drafted and filed the documents necessary to carry forward his appeal, let alone discover the probable error on which to base his appeal.

*Judgment accordingly.*

MIDDLETON, J., concurs.

YOUNGER, P. J., dissenting in part. I concur in the opinion of the majority in this case in practically everything except the conclusion reached. In this respect I find myself in the position of Judge Stewart of the Supreme Court in the case of *State* v. *Edwards,* 157 Ohio St., 175, in which he concurred in paragraphs one, two, three, four, five and six of the syllabus, but dissented from the judgment.

In the first place, leave to appeal from a sentence entered upon a plea of guilty is an anomaly, except perhaps in the event that through inadvertence or mistake the sentence imposed is for a different crime than that to which the guilty plea was entered, neither of which is claimed here. The guilty plea and

the sentence are both in strict conformity with Section 2901.13, Revised Code.

In the second place, I do not believe the provisions of Section 2947.05, Revised Code, are mandatory where the defendant has entered a guilty plea, because by its very provisions it specifies that, before sentence, the defendant must be informed of "the verdict of the jury, or the finding of the court," neither of which are involved here. This section originally included only "the verdict of the jury" (Section 13694, General Code, Page's Edition, 1920), and was later amended to include "or the finding of the court." The trial court could not comply with this section and inform the defendant of the "verdict of the jury" or the "finding of the court," for there had been none.

Everyone concerned now admits that the record is ambiguous and that the trial judge should have used words to this effect.

"Mr. Baker, your counsel has entered a plea of guilty for you to the crime of armed robbery. The Prosecuting Attorney has read to the court the definition of this crime which is simply stealing something of value from a person while you were armed with a pistol, and you have heard the prosecutor read the penalty prescribed by the laws of Ohio for this crime, which is imprisonment in the penitentiary for from ten to twenty-five years.

"Now, do you, James Baker, have anything to say as to why judgment should not be pronounced against you?"

However, we must take the record as we find it.

If the basis of the alleged error is that the trial judge, after saying, "Do you have anything to say?" stopped in the middle of a sentence which should have included, "as to why judgment should not be pronounced against you," then it is extremely technical and inconsequential. Since this court has found, and I agree, that the defendant was represented by counsel who had waived the reading of the indictment and most important of all entered a guilty plea, the defendant has in my opinion waived this technicality and is bound by the action of his counsel. No one would have expected the defendant to get up and say, "Judge, this is a delightful spring day we are having this 25th of March." But having just heard the Prosecuting

Attorney read the definition of the crime and the penalty of 10 to 25 years in the penitentiary, the only matter of any immediate pertinency would be as to why sentence should not be pronounced. If, as he now claims, the defendant had a deal with the Prosecuting Attorney and the sheriff he would have jumped to his feet and would have said, "Judge, the Prosecuting Attorney and sheriff promised me if I plead guilty I would not get over four years."

If the basis of the alleged error is that the trial judge ignored the defendant and spoke only to his counsel it is based upon presumption. This is a very reasonable presumption, and I agree with it, because counsel answered the question immediately by saying, "Nothing to say, your Honor," and the Judge said, "the sentence is that *he be* confined," etc. However, we are here faced with a very old and time honored legal presumption. This presumption cannot be better stated than in the following, taken from 3 Ohio Jurisprudence (2d), 666, Appellate Review, Section 715:

"As to validity and regularity of proceedings below—

"In appeals on questions of law, all reasonable presumptions consistent with the record will be indulged in favor of the validity of the judgment or decision under review, and of the regularity and legality of the proceedings below. * * * The inference which the law raises is that every court does its duty and does right, and, unless the record shows something to the contrary, it will be presumed that the lower court acted wholly within the law, that the decree or judgment was made upon proper grounds, that the court below applied the law correctly, and that its action was justified.

"A state of facts which is repugnant to the judgment will not be presumed, but on the contrary all reasonable inferences tending to support it will be adopted, and if the record is ambiguous it will be given that construction which is most favorable to the judgment."

From all that appears from the record the judge could, and might, have addressed himself to the defendant personally. He could, and might, have looked directly at him, or even pointed his finger or gavel at him. In my opinion, the legal presumption must prevail over a presumption, however reasonable, **made from the ambiguous record.**

We now come to the main reason and the impelling cause for my dissent in this case. In having his motion for leave to appeal sustained, the defendant has won a Pyrrhic victory. I agree with, and adopt, the words of Judge Hornbeck cited in the majority opinion that "this court has the widest discretion as to the propriety of granting a leave to appeal." I do not believe the leave to appeal is proper in this case as it will do the defendant more harm than good.

If the appeal is heard, it will in all probability result in a finding that error intervened and in a setting aside of the sentence and judgment. In such event, there is only one thing which this court can possibly do, and that is to remand to the Common Pleas Court for the sole and only purpose of resentencing the defendant as was done in *Silsby* v. *State, supra*, cited in the majority opinion and in *State* v. *Ausberry*, 83 Ohio App., 514.

Even if the defendant could obtain leave to withdraw his plea of guilty and enter a plea of not guilty, which I do not believe is possible, he has no chance to win as his attorney testified at the hearing herein that the possibility of putting on a successful defense in this case, or Gillespie's case, was never even discussed or considered. The chance of probation is a wild dream.

Upon resentence to the penitentiary, a date would be set for a hearing on parole six years and four months from date of entry under the new sentence, and the two years the defendant has served under his current sentence would be lost. The defendant could then very well paraphrase King Pyrrhus and say: "One more such a victory over the technicalities of the law and I am utterly undone."