[Crim. No. 7650. Second Dist., Div. One. Dec. 26, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. PAUL LEROY ALLEN, et al., Defendants and Appellants.

Virgil V. Becker, under appointment by the District Court of Appeal, for Defendants and Appellants.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and S. Clark Moore, Deputy Attorney General, for Plaintiff and Respondent.

WOOD, P. J.—The three defendants, Paul Allen, Ann Allen, and Patrick Tully, were accused of unlawfully possessing heroin. Trial by jury was waived. Upon stipulation the cause was submitted on the transcript of the preliminary examination, with the right to present additional evidence. Defendants were adjudged guilty. Allegations of prior felony convictions of Paul Allen and Tully were found to be true (three convictions as to Allen and two as to Tully). Each of the defendants, Paul Allen and Tully, appeals from the judgment against him and from the order denying his motion for a new trial. (Ann Allen has not appealed.)

Appellants contend that the heroin was obtained by illegal search and seizure; that the court erred in certain respects while arraigning and sentencing them; and that the evidence of prior convictions was insufficient.

The arrest of the defendants was made on October 24, 1960. About 30 days prior thereto, Officer Fessler had arrested one Barbara Hazlett upon a charge of addiction to use of narcotics, and she had furnished bail upon that charge. About noon on the day of the arrest herein, Barbara Hazlett told Officer Fessler that her husband was buying narcotics from Tully who was the delivery boy for Paul Allen, who was the main source of the supply. At that time she also said: she had no way of getting in touch with them, but when they called her she would call the officers; and that if the officers followed Tully after he made a delivery they would find Paul Allen. About 4 p.m. of that day, she told Officer Fessler: that Tully was going to deliver narcotics to her, about 5 p.m., on Eastern Avenue at a place about one block south of the San Bernardino Freeway; and that she needed $50 to go through with the deal. The officer took her to the jail where her husband had been booked on a charge of possession of narcotics, and the officer assisted her in withdrawing $50 from her husband's property to complete the narcotics transaction.

Officers Fessler and Dorrell went to the place designated by Hazlett as the place where the delivery would be made, and there they saw her and Tully have a conversation, go into a small grocery store for a short time, then come outside, enter separate cars, and leave. Officer Fessler knew Tully—having arrested him previously for using narcotics. The officers followed Tully when he drove away from that place, but "lost" him when he made various turns. Later, they found his car at 9554 East Whittier Boulevard. The manager there said that the person who drove the Tully car was in apartment 20.

Officer Dorrell testified: He went up an outside stairway to apartment 20, while Officer Fessler stood on the ground below a side window of that apartment. When Officer Dorrell knocked on the door, Paul Allen opened it, and the officer said he would like to speak to Tully. Paul Allen said, "All right, come in." The officer (witness) stood there (outside the door) for a short time, waiting for Officer Fessler to come up the stairway, and during that time he (witness) looked into the room and saw Tully sitting on a bed, and saw Ann Allen standing behind Paul Allen. During that time he also saw hypodermic needle marks on Paul's left arm and on Ann's right arm, and he formed the opinion that the marks on Paul's arm were caused by injection of narcotics and that

Paul was a user of narcotics. After Officer Fessler arrived at the door, they entered the apartment, and Officer Fessler placed Paul under arrest.

Officer Fessler testified: When he stood beside Officer Dorrell, outside the apartment door, he saw Paul standing inside the doorway in a short-sleeved shirt and saw on his left arm marks resembling narcotic injection marks. They entered the apartment and he (witness) told Paul that he was under arrest. When he asked Paul what his name was, Paul said, "Johnson." When the officer asked if he had something with his name on it, he produced a driver's license which did not show the name Allen or Johnson.

Officer Dorrell testified further: That after he was in the apartment he went to Tully, who was sitting on a bed, and asked if he was using narcotics. When he replied in the affirmative, the officer (witness) asked if he might see his arms. Tully showed both arms, and the officer observed fresh hypodermic needle marks thereon, and he formed an opinion that Tully was a user of narcotics. The officer asked Tully if he lived there, and he replied in the affirmative. Paul also said that he lived there. Ann said she did not live there. He (witness) arrested Tully. Then the officers searched the apartment.

The officers found a satchel in the bathroom, in which satchel there was a box labeled "Gelatin capsules," and in the box there were: four ballons containing a white powder; a measuring spoon; a box of gelatin capsules; a knife, a medicine dropper; and a vial containing four hypodermic needles. They also found a small bindle, containing brown powder, on a chest of drawers in the bathroom. (Those articles, found by the officers, were received in evidence.)

According to testimony of a chemist, the white and brown powder found by the officers was heroin.

The officers did not have a warrant of arrest or a search warrant.

Paul Allen testified: that when Officer Dorrell knocked on the door of the motel, he (witness) freely and voluntarily opened the door without asking who it was. Immediately after the door was opened, Officer Dorrell stepped through the doorway, and Officer Fessler who came behind the first officer also stepped through the door. When the officer inquired as to the name of this defendant, he (Paul) said his name was "Lunsford," which was the name on a false identification card which he carried for the reason that in Los Angeles if

a person is stopped by the police a "run" is made on his record, and if he has a record he goes to jail for two or three days at least. Later, he admitted that his name is Paul Allen. Then the officer told him to roll up his sleeves, and there were hypodermic needle marks on his arm. He opened the door without any knowledge that any narcotics were in the house. On cross-examination, he said he had moved there on the day he was arrested. Tully moved there with him.

Tully did not testify.

 A contention of appellants is that the heroin was obtained by illegal search and seizure in that Hazlett was not a reliable informant and there was no probable cause for the arrest and search. Probable cause for an arrest without a warrant exists if a person of ordinary prudence would be led to believe or conscientiously entertain a strong suspicion of the guilt of the accused. (*People* v. *Gusukuna*, 152 Cal.App.2d 135, 137 [312 P.2d 714].) The officers knew Hazlett and Tully and knew that they were users of narcotics. After Hazlett had told the officers that Tully would deliver narcotics to her at a certain place about 5 p.m., the officers saw those persons meet at said place and time, have a short conversation, and then enter separate cars and drive away. The fact that such meeting occurred in the manner in which the informant said it would occur was some evidence of the reliability of the informant. In *People* v. *Holguin*, 145 Cal.App.2d 520, 522 [302 P.2d 635], it was held that information given by an informer as to the appearance of a suspected person at a certain cafe, which information coincided with the description of the person as later observed by the officers, was some evidence of the reliability of the information provided by the informer. In the present case, the reliability of the information furnished by Hazlett was further indicated when the officers observed, through the open doorway of the apartment, that Tully was in the apartment with the other defendants who had hypodermic needle marks on their arms. Such marks may be considered as a factor, among other circumstances, in determining probable cause for arrest upon a charge of unlawful possession of narcotics. (See *People* v. *Robles*, 183 Cal.App.2d 212, [6 Cal.Rptr. 748]; and *People* v. *Elliott*, 186 Cal.App.2d 178, 182 [8 Cal.Rptr. 795].) Furthermore, the officers did not enter the apartment unlawfully. When Officer Dorrell knocked on the door, defendant Paul Allen opened the door and invited him in. While the officers were in the apartment,

Tully, who had fresh needle marks on his arms, said that he was a user of narcotics and that he lived there. There was probable cause for the arrests, search and seizure.

 Appellants also contend that the court erred while arraigning them in that they were not represented by counsel. The record shows that each appellant chose to appear in propria persona. Neither of them asked to be represented by counsel. There is no merit to this contention.

 Appellants contend further that the court erred prejudicially in pronouncing the sentences without informing them of the charge, plea, and verdict, and without asking if there was any legal cause why judgment should not be pronounced. After Tully had made and argued his motion for a new trial, the court asked him if he waived arraignment and was ready for sentence. He replied in the affirmative. Tully expressly waived such arraignment, but the court did err in not asking him if there was any legal cause why sentence should not be pronounced. Under the circumstances here, where Tully made and argued his motion for a new trial, and had appeared in propria persona and participated actively in the trial, it cannot be said that such error was prejudicial. As to appellant Allen, there was no waiver of arraignment for sentence. After Tully had made and argued his motion for a new trial, Allen said that he wished to make the same motion which Tully had made. Thereupon, the motion was denied and there was an extended discussion by the court and Allen with reference to the prior convictions, and the penalty herein. Allen said he had been sentenced to state prison about two months previously, and he asked that the sentences run concurrently. Probation was denied, and he was sentenced to state prison, and it was ordered that the sentences run consecutively. The court erred in not arraigning Allen for sentence and in not asking him if there was any legal cause why sentence should not be pronounced. Those errors were not prejudicial under the circumstances here. Allen had represented himself throughout the trial, had cross-examined witnesses, and had argued various matters. It is clear that he knew the charge against him, and knew his plea and the verdict. In *People* v. *Henry*, 86 Cal.App.2d 785, 790 [195 P.2d 478], it was said: "The first [contention] is that the appellant was not arraigned for judgment as required by section 1200 of the Penal Code. . . . The matter was not called to the court's attention and is raised for the first time on appeal. . . . [A]ny error appears to come within the pro-

visions of section 4½ of article VI of the Constitution. No prejudice appears, and it would be an idle act and a prejudice to the appellant to return her solely for the purpose of again pronouncing judgment.''

 Appellants also contend that the evidence of prior convictions was insufficient. The defendants stipulated that the court might determine the matters as to prior convictions from the probation reports and evidence. The probation reports show the prior convictions which are alleged herein. Certified copies of documents showing the convictions were received in evidence. As to Allen, a file in another case against him (case No. 231556, superior court) was received in evidence without objection—the probation report therein shows the alleged prior convictions.

The evidence was sufficient to support the judgments.

The judgments and the order denying the motions for a new trial are affirmed.

Fourt, J., and Lillie, J., concurred.