No. 60,607

STATE OF KANSAS, *Appellee*, v. LESLIE WEBB, *Appellant.*

(748 P.2d 875)

Opinion filed January 15, 1988.

*Martha J. Coffman*, assistant appellate defender, argued the cause and *Benjamin C. Wood*, chief appellate defender, was with her on the brief for appellant.

*James J. Welch*, assistant district attorney, argued the cause and *Robert T. Stephan*, attorney general, and *Gene M. Olander*, district attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: This is a criminal action. Leslie Webb appeals his sentences for aggravated robbery, K.S.A. 21-3427, and aggravated assault on a law enforcement officer, K.S.A. 21-3411.

The facts giving rise to this action are as follows: On January 4, 1986, at 3:55 a.m., Webb entered a Kwik Shop in Topeka and demanded money from the cashier. He showed her the revolver he was carrying and said he would shoot her if necessary. He escaped with $69.61.

On April 11, 1986, at 3:33 a.m., Webb entered another Kwik Shop in Topeka and again committed armed robbery. He also took $10.00 from a customer who was in the store. This time,

however, police were on surveillance. They followed him as he left the store.

After a high-speed car chase, Webb left his car and ran down an alley. When he was spotted by helicopter, a police officer caught up with him. Webb started waving the gun, pointing it sometimes at his own head and sometimes at the officer. The officer repeatedly ordered Webb to drop the gun, and Webb kept yelling, "Shoot me! Go ahead and shoot me!" When Webb would not drop the gun, the officer shot him in the arm and took him into custody.

The cashier from the first Kwik Shop hold-up identified Webb. After plea negotiations, Webb pled guilty to one count of aggravated robbery and one count of aggravated assault on a police officer. The district court ordered a presentence investigation and report.

At the sentencing hearing, the court asked Webb's counsel, Al Bandy, if he had examined the presentence report. Bandy replied he had, and that he had discussed the report with Webb. The court then asked for and received counsels' comments. Defense counsel made an impassioned statement in behalf of Webb. He spoke of Webb's "severe drinking problem," contending Webb was intoxicated while committing the crimes. He stressed that mandatory sentencing because of the gun meant Webb would spend at least three and a half years in jail. He argued it appeared Webb had been in more danger of shooting himself than anyone else. He declared the minimum sentence gave Webb plenty of time to break his drinking habit, which he contended was the major cause of Webb's lawlessness. He asserted the shock of being shot by the police officer had given Webb the motivation to change his ways.

At the close of Bandy's remarks, the court thanked both attorneys and then asked without specifying to whom he addressed the question, "I would ask, is there any legal reason why sentence should not be imposed?" Bandy replied there was not. Webb was silent. The transcript shows nothing further, but the journal entry states: "[T]he Court inquires if there is any legal reason why sentence should not now be imposed. The defendant replies in the negative." Since the transcript failed to indicate a response by Webb, we conclude he made no response to the

question. A silent record does not prove compliance with a statute.

The court then addressed Webb, saying:

"If you would please rise, sir. Mr. Webb, the court has checked the—read the Presentence Report in some detail in connection with this situation and others that you have had, and I'm incorporating in this sentencing that Presentence Report by this reference and making it a part hereof. Needless to say, Mr. Webb has had many problems over a very long period of time, not the least of which is his drinking."

The court then sentenced Webb to 3 to 10 years for aggravated assault on a police officer, the sentence to run consecutive to a 10- to 20-year sentence for aggravated robbery. Both sentences were to run consecutive to any sentences previously imposed. Thus, the sentences ran consecutive to a one- to two-year sentence for forgery after Webb's probation for that conviction was revoked. The actual sentence imposed was 14 to 32 years, although the journal entry reflects a 10- to 20-year sentence for aggravated assault and 3 to 20 years for aggravated robbery.

Webb made a motion to modify the sentence. At the hearing, the court noted the sentence as reported in the sentencing transcript, rather than in the journal entry. Mr. Bandy, apparently relying on the journal entry, stated the consecutive sentences meant Webb's actual sentence was 14 to 42 years' imprisonment. He pointed out Webb would not be eligible for parole until he had served almost 10 years. Bandy also noted this would be Webb's first incarceration and that he could be rehabilitated in less time. The allocution issue was not raised.

The State noted, for the first time, that Webb had been involved in previous armed robberies of convenience stores. In one case, Webb and his partner shot into the floor to intimidate a cashier.

Mr. Bandy, relying on the sentencing transcript rather than the journal entry, asked that the minimum sentence for assault remain the same, but that the minimum term for the robbery be halved to five years. The State noted the court was authorized by statute to impose a sentence of 15 years to life. It noted the SRDC report's recommendation of incarceration because of chronic impulsive behavior and alcoholism showed no more reason to modify a 10- to 20-year sentence than had the presen-

tence report. The court therefore denied Webb's request for a 5-
to 20-year sentence for aggravated robbery to run concurrently
with his aggravated assault sentence.

The first issue Webb raises is whether resentencing is re-
quired because the court did not ask him personally whether he
had anything to say before sentence was imposed. K.S.A. 22-
3424(4) states:

"Before imposing sentence the court shall afford counsel an opportunity to
speak on behalf of the defendant and shall address the defendant personally and
ask him if he wishes to make a statement on his own behalf and to present any
evidence in mitigation of punishment."

The State asks that we find the statute satisfied by the detailed
argument by Bandy at the sentencing hearing and by the court's
study of the presentence report which contained Webb's expla-
nations for his actions. It asks in the alternative that we find
Webb waived his right to allocution by allowing his counsel to
reply to the court's question without claiming a right to respond
personally.

If we nevertheless find error, the State asks that the error be
deemed harmless, as there is no evidence Webb would have
anything to say on remand in mitigation of his sentence. The
record shows his counsel had made all possible arguments in his
favor before the court pronounced sentence. Arguments were
again made by defense counsel during the hearing on Webb's
motion for modification of sentence. Webb raises no additional
points he would have raised to the sentencing court had he the
opportunity.

"Allocution" is defined as the "[f]ormality of court's inquiry of
prisoner as to whether he has any legal cause to show why
judgment should not be pronounced against him on verdict of
conviction." Black's Law Dictionary 70 (5th ed. 1979). Such
allocution is provided a criminal defendant under K.S.A. 22-
3422. Historically, the term "allocution" has been applied also to
the right to speak at sentencing. Kansas provides a defendant this
right under K.S.A. 22-3424(4). The practice of allocution is so
steeped in history its origin is unknown. See Barrett, *Allocution,*
9 Mo. L. Rev. 115 (1944). It was well established in English
common law. There, the accused was not permitted counsel or to
be a witness in his own behalf. Allocution was thus the only time

in the proceeding the defendant could present facts supporting his innocence as well as facts supporting mitigation of his sentence. Allocution was thus extremely important, and its omission justified reversal. See Annot., 96 A.L.R.2d, 1292, 1295.

The majority of crimes under English common law were punishable by death, so it became necessary to allow some amelioration of the standard sentence. A woman who was pregnant was allowed a stay until her child was born. The clergy were exempted from death in some crimes. The "benefit of clergy" was then extended to those people who could read. Finally, anyone could plead "benefit of clergy" as a plea for mercy. See 9 Mo. L. Rev. at 120-21. It was thus important that the silent defendant be given his or her one chance to state reasons why the death sentence should not be imposed.

There was another use of allocution. In early common law, not only were convicted defendants frequently put to death, but they were "placed in a state of attainder" which meant their property was forfeited to the crown and their descendants declared "of corrupt blood" (which meant, among other things, they could not claim to be of gentle or noble blood). Before land or title were taken from descendants, however, allocution was afforded them to give reason why their ancestor (usually their father) should not have been condemned. These laws led to such odd cases as the one in which a descendant, during his allocution, proved the sentence of his already-executed ancestor should be reversed as the *ancestor* had been denied allocution. The descendant was thus allowed to inherit his ancestor's title and land. See *Anonymous*, 3 Mod. 265, 87 Eng. Rep. 175 (K.B. 1689), *cited in* 9 Mo. L. Rev. at 121-22.

Because of modern procedural protections of a criminal defendant's rights, allocution is now disregarded or considered a mere technical formality in many of the jurisdictions in which allocution is not required by statute or court rule. See 96 A.L.R.2d at 1298. However, in those jurisdictions where allocution is strictly enforced, reversal of the conviction is no longer required; instead, the sentence alone is remanded for new proceedings affording allocution.

Criminal defendants are recognized as having a clear right to allocution under federal law. See Fed. R. Crim. Proc. 32(a)(1), the verbatim model for K.S.A. 22-3424(4).

The facts of the present case are very similar to those in *Green v. United States*, 365 U.S. 301, 5 L. Ed. 2d 670, 81 S. Ct. 653, *reh. denied* 365 U.S. 890 (1961). In *Green*, the federal court, before sentencing, asked, "Did you want to say something?" without specifying to whom the question was addressed. The defendant's counsel replied by making a detailed argument for leniency. The United States Supreme Court noted the historical origins of the rule of allocution dated to a time when defendants were not allowed the right to counsel or to testify. The Court nevertheless said:

"But we see no reason why a procedural rule should be limited to the circumstances under which it arose if reasons for the right it protects remain. None of these modern innovations lessens the need for the defendant, personally, to have the opportunity to present to the court his plea in mitigation. The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." 365 U.S. at 304.

The Court therefore held that affording *counsel* the opportunity to speak did not fulfill the requirements of the statute.

The Court nevertheless held that because of the general nature of the trial court's question, it may have been meant for the defendant and the defendant may, by "the significant cast of the eye or the nod of the head," have signaled he recognized his right to speak but chose to exercise the right through his attorney. The Court therefore held the defendant had failed to meet his burden of proving he was denied his statutory right and refused to remand for sentencing.

The Court also held, however, that trial courts must, in the future, address themselves unambiguously to the defendant.

Justice Black, in a logical dissent, argued the defendant's sentence should be remanded because the State admitted the question had been directed at counsel and the majority had no authority for asserting a defendant has the burden of proving a court-created hypothetical did not occur.

In *Hill v. United States*, 368 U.S. 424, 7 L. Ed. 2d 417, 82 S. Ct. 468, *reh. denied* 369 U.S. 808 (1962), the Court held failure to provide allocution was not grounds for collateral attack under § 2255 of Title 28, U.S.C., because the error was not of jurisdictional or constitutional dimension. In *Taylor v. Hayes*, 418 U.S.

488, 498-99, 41 L. Ed. 2d 897, 94 S. Ct. 2697 (1974), however, the United States Supreme Court noted that, even when summary punishment for criminal contempt is imposed during trial, the court normally first affords the defendant allocution.

The American Bar Association's Standards for Criminal Justice § 18-6.4 (2d ed. 1980) recommends that sentencing proceedings should "afford to the defendant his or her right of allocution," and the majority of states provide for allocution by tradition and court rules, if not by case law and statute.

However, even in states such as Kansas, in which allocution is statutorily required, the courts are generally liberal in finding compliance. See 96 A.L.R.2d at 1295, 1329. In *People v. Darling,* 46 Ill. App. 3d 698, 361 N.E.2d 121 (1977), the court held the trial court did not commit error even though the defendant was not allowed allocution as provided by statute because her attorney was given the opportunity to present evidence in mitigation and suggest sentencing alternatives; the defendant did not specifically make a request to speak; and allocution would not, under the circumstances of the case, have changed the sentence imposed.

Several other jurisdictions agree that allocution is satisfied by counsel's answer. See 96 A.L.R.2d at 1331. Other jurisdictions have held a motion for new trial fulfills the purpose of allocution. See, *e.g., Spigner v. State,* 58 Ala. 421, 424 (1877).

Many jurisdictions have held that noncompliance with a mandatory statute is, of course, error but, unless prejudice to the defendant is shown, not reversible error. See, *e.g., People v. Allen,* 211 Cal. App. 2d 341, 27 Cal. Rptr. 392 (1962); *State v. Gallagher,* 46 Wash. 2d 570, 283 P.2d 140 (1955); and see 96 A.L.R.2d at 1306, 1335.

Often the reason given for refusing to remand the sentence is that the defendant, on appeal, offered no information which could have resulted in mitigation. See, *e.g., State v. Bray,* 67 N.J. Super. 340, 170 A.2d 501 (1961).

Remand was refused in *Hodge v. State,* 29 Fla. 500, 510-11, 10 So. 556 (1892), the court finding from the record no error for which judgment should be reversed and noting that a motion for a new trial had been made. The court stated, "[I]t does look like child's play to send the case back for the purpose of asking a

question to which there can be no answer that will change the prisoner's fate . . . ."

Although courts usually refuse to find lack of allocution reversible error, they seldom do so on the grounds of waiver where the accused fails to speak though afforded the opportunity, especially when the right to allocution is mandated by statute. See 21 Am. Jur. 2d, Criminal Law § 531, p. 879; 96 A.L.R.2d at 1324.

There are jurisdictions, however, where failure to provide statutory allocution has been held to require remand of sentencing. See, e.g., *Tomlinson v. State*, 98 N.M. 213, 647 P.2d 415 (1982).

Several jurisdictions have held representation by counsel who makes a plea for mitigation is not an acceptable substitute for the defendant's personal allocution rights. See, e.g., *People ex rel. Williams v. Murphy*, 6 N.Y.2d 234, 189 N.Y.S.2d 182, 160 N.E.2d 480 (1959); *State v. Baker*, 113 Ohio App. 59, 177 N.E.2d 348 (1960); and see 96 A.L.R.2d at 1331. In *Mohn v. State*, 584 P.2d 40, 44 (Alaska 1978), the court declared "there is no substitute for the impact on sentencing which a defendant's own words might have if he chooses to make a statement."

Kansas has provided a statutory right to allocution since 1868. See *State v. Engberg*, 194 Kan. 520, 400 P.2d 701 (1965), *cert. denied* 383 U.S. 921 (1966), *overruled on other grounds State v. Duke*, 205 Kan. 37, 468 P.2d 132 (1970). In *Engberg*, a defendant who pled guilty contended allocution was not given him. The statute then in effect was K.S.A. 62-1510 (Corrick), which provided: "When the defendant appears for judgment, he must be informed by the court of the verdict of the jury, and asked whether he has any legal cause to show why judgment should not be pronounced against him." This statute is very similar to our present K.S.A. 22-3422, which reads:

"When the defendant appears for judgment, he must be informed by the court of the verdict of the jury, or the finding of the court and asked whether he has any legal cause to show why judgment should not be rendered. If none is shown the court shall pronounce judgment against the defendant."

The court in *Engberg* noted the modern trend of denying reversal when the defendant was represented by counsel and failed to protest his lack of personal allocution. The court found

such lack of protest constituted waiver of allocution rights (although, as discussed earlier, the majority of jurisdictions with statutory allocution actually have held it could not be waived).

The *Engberg* court noted we refused to remand for resentencing in *State v. Lund*, 51 Kan. 1, 32 Pac. 657 (1893), holding a defendant had no absolute right to allocution in a misdemeanor case (unlawful sale of liquor). *Lund* held the defendant was not prejudiced because he moved for a new trial after the verdict and before sentencing, at which time he had the opportunity to make all arguments on why sentence should not be imposed.

The court also discussed *State v. Jennings*, 24 Kan. 642 (1881), where we remanded for resentencing even though the defendant offered no grounds on appeal for why sentence should not have been imposed. But *State v. Engberg* noted the *State v. Jennings* majority stated the decision to remand was made "with great doubts and many misgivings" and was specifically confined to the facts of the case, which were as follows: The defendant was charged with first-degree murder. The jury found him guilty of murder, but failed to state of what degree. The court sentenced the defendant for first-degree murder. No motion for new trial was made, and the record showed not only lack of allocution, but that the defendant was not informed of the verdict.

*Engberg* held because K.S.A. 62-1510 (Corrick) was found under the procedural section of the criminal code, "failure to comply with its terms is not jurisdictional." 194 Kan. at 525. It went on to decide the failure to comply with the statute, although of course error, was not reversible error because it did not affect a substantial right of the defendant. It then cited our former statute, K.S.A. 62-1718 (Corrick), which provided: "On an appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties." See K.S.A. 60-2105 for the present rule.

The *Engberg* court did not discuss two other previous Kansas cases which had also addressed the issue of allocution. In *State v. Terry*, 98 Kan. 796, 161 Pac. 905 (1916), the record did not show allocution had been afforded a criminal defendant. We held the defendant's motion for a new trial showed he had been advised of the verdict and given an opportunity to show why it

should not be accepted by the court. We held the purpose of the allocution statute then in effect was to show why the judgment was in error, thus ignoring the purpose of pleading mitigation. We also held that we could not assume "from the mere silence of the record" that allocution had not been given. 98 Kan. at 799.

In *Miller v. Hand,* 190 Kan. 246, 372 P.2d 993 (1962), we denied a petition for habeas corpus, holding there was no showing the defendant was deprived of any constitutional right by the failure to provide allocution.

The above cases were all decided before the legislature implemented, in 1970, K.S.A. 22-3424(4), which supplements the previously discussed K.S.A. 22-3422. The statute clearly states the defendant shall be addressed personally and asked if he would like to make a statement "on his own behalf." This mandate distinguishes the present law from those cases which have held statements by counsel to be sufficient.

K.S.A. 22-3424(4) states clearly the purpose of allocution is to provide an opportunity for the defendant to present any argument in *mitigation* of his sentence in addition to raising claims of error. This language supersedes the assumption in those cases such as *State v. Lund,* 51 Kan. 1, and *State v. Terry,* 98 Kan. 796, which found arguments made in a motion for new trial fulfilled the purpose of allocution.

There have been only two relevant Kansas appellate cases concerning K.S.A. 22-3424(4). In *State v. Fennell,* 218 Kan. 170, 542 P.2d 686 (1975), a defendant was sentenced *in absentia* for escaping from custody, although he at that time was incarcerated in California and evidenced his desire to be present at the sentencing hearing. He claimed error under what is now K.S.A. 1986 Supp. 22-3405 (presence of defendant required) and K.S.A. 22-3424(4). We held there were two purposes for the requirement of defendant's presence at sentencing: so he may be incarcerated immediately after sentencing and so he may exercise his right of allocution. The court remanded for resentencing, thus implicitly finding the right of allocution to be substantial. 218 Kan. at 178.

The other case involving K.S.A. 22-3424(4) is *State v. Osbey,* 238 Kan. 280, 710 P.2d 676 (1985), in which the trial court failed, through oversight, to sentence a criminal defendant for her

conviction of unlawful possession of a firearm when it sentenced her for first-degree murder. After a motion by the State for correction, the court sentenced defendant six months later for the second conviction. One of the claims of error in the challenge to this resentencing was that the defendant did not receive her K.S.A. 22-3424(4) right to give reasons why she should not be sentenced for unlawful possession of a firearm. Finding the resentencing did not prejudice the defendant, we affirmed the sentence without specifically addressing the issue of allocution. 238 Kan. at 288.

K.S.A. 62-1718 (Corrick) was interpreted in *State v. Neff*, 169 Kan. 116, 218 P.2d 248, *cert. denied* 340 U.S. 866 (1950), in which we said: "The statute is not permissive but mandatory. It does not say the court *may* give judgment without regard to technical errors or defects, etc. It says, '. . . the court *must* give judgment.' " 169 Kan. at 129. In *State v. Hammon*, 84 Kan. 137, 113 Pac. 418 (1911), we declared the statute to be "an expression of the sound and sensible rule that error, to be availing, must be injurious in fact as well as in theory." 84 Kan. at 146.

We hold the provision in K.S.A. 22-3424(4) establishes the right of a defendant to allocution, which right is not waived by the defendant's silence or by argument of counsel. In this case, however, Webb filed a motion to modify his sentence and never mentioned denial of his right to allocution in the pleadings or argument. We hold Webb's failure to raise the issue in his motion to modify the sentence constitutes waiver of his statutory right to allocution.

The second issue on appeal is whether the sentencing court erred in not considering the factors set out by K.S.A. 21-4606(2) and not considering Webb's individual circumstances pursuant to K.S.A. 1986 Supp. 21-4601 in imposing the lowest minimum sentence pursuant to K.S.A. 21-4606(1). The statutes read as follows:

K.S.A. 1986 Supp. 21-4601:

"This article shall be liberally construed to the end that persons convicted of crime shall be dealt with in accordance with their individual characteristics, circumstances, needs, and potentialities as revealed by case studies; that dangerous offenders shall be correctively treated in custody for long terms as needed; and that other offenders shall be dealt with by probation, suspended

sentence, fine or assignment to a community correctional services program whenever such disposition appears practicable and not detrimental to the needs of public safety and the welfare of the offender, or shall be committed for at least a minimum term within the limits provided by law."

K.S.A. 21-4606(1) and (2):

"(1) In sentencing a person to prison, the court, having regard to the nature and circumstances of the crime and the history, character and condition of the defendant, shall fix the lowest minimum term which, in the opinion of said court, is consistent with the public safety, the needs of the defendant, and the seriousness of the defendant's crime.

"(2) The following factors, while not controlling, shall be considered by the court in fixing the minimum term of imprisonment:

"(a) The defendant's history of prior criminal activity;

"(b) The extent of the harm caused by the defendant's criminal conduct;

"(c) Whether the defendant intended that his criminal conduct would cause or threaten serious harm;

"(d) The degree of the defendant's provocation;

"(e) Whether there were substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;

"(f) Whether the victim of the defendant's criminal conduct induced or facilitated its commission;

"(g) Whether the defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury that he sustained."

This court will not, except in special circumstances showing abuse of discretion, set aside a sentence which is within statutory limits. *State v. Johnson,* 239 Kan. 124, 125, 716 P.2d 192 (1986).

K.S.A. 1986 Supp. 21-4601 states the objectives of the corrections system, but does not require the sentencing court to specifically consider those objectives as it must the factors in K.S.A. 21-4606. See *State v. Jennings,* 240 Kan. 377, 381, 729 P.2d 454 (1986).

Except for mentioning Webb's drinking problem, the court did not specify its reasons for the sentence, but instead stated it was incorporating the presentence report into the record. Webb contends this is not sufficient to show the court sufficiently considered the statutory factors set out in K.S.A. 21-4606.

The presentence report noted that Webb, at 22, had previous offenses against him which included theft, obstruction of legal process, DUI, and four counts of forgery for which he was still on probation. The report found Webb had a poor work record and a serious marijuana and alcohol abuse problem. He had been

given many opportunities to change his criminal behavior and end his substance abuse, but failed to do so. The court services officer recommended a lengthy term of incarceration, finding little likelihood that Webb would discontinue his criminal conduct. He recommended the sentences imposed run consecutive to each other and to sentences imposed for prior convictions.

We held in *State v. Buckner*, 223 Kan. 138, 574 P.2d 918 (1977), that, when a sentence exceeds the statutory minimum, a court is well advised to give a detailed statement of those factors considered by the court in order to aid the appellate court in determining whether discretion was abused.

In *Buckner*, we held, based on the particular facts and circumstances of the case, including a generally favorable presentence report, that the sentencing court had abused its discretion and remanded for sentencing by a different court. However, the failure to make an original detailed report does not necessarily show an abuse of discretion. Each case must be considered on its own facts. *State v. Bennett*, 240 Kan. 575, 578, 731 P.2d 284 (1987).

In *Jennings*, we did not find an abuse of discretion where the sentencing judge did not list all the statutory factors but specifically stated he had considered them. In the present case, the court did not specifically mention the statute but did incorporate the presentence report, which itself addressed each of the seven factors given in K.S.A. 21-4606(2). Since the presentence report contained the seven factors, we find the court substantially complied with K.S.A. 21-4606.

The judgment of the trial court is affirmed.