Nos. 93,879
93,895

STATE OF KANSAS, *Appellee/Cross-appellant*, v. DARRELL
STALLINGS, *Appellant/Cross-appellee*.

(163 P.3d 1232)

Opinion filed August 10, 2007.

*Jessica J. Travis*, of Keck & Travis, LLC, of Olathe, and *Carl E. Cornwell*, of Cornwell, Erickson, Travis & Breer, of Olathe, were on the briefs for the appellant/cross-appellee.

*Sheryl L. Lidtke*, deputy district attorney, *Jerome A. Gorman*, district attorney, and *Phill Kline*, attorney general, were on the brief for appellee/cross-appellant.

The opinion of the court was delivered by

JOHNSON, J.: Following Darrell Stallings' conviction on five counts of capital murder, the State sought the death penalty. Pursuant to Stallings' request for allocution and over the State's objection, the district court permitted Stallings to address the sentencing jury on the issue of mitigation of punishment; Stallings was not sworn or subject to cross-examination. The jury could not agree on the death penalty, and the court sentenced Stallings to five consecutive hard-50 life sentences on the capital murder convictions.

When Stallings appealed his convictions, the State cross-appealed on the issue of whether a defendant has a right to allocution before the jury during the death penalty phase of a capital murder trial. The State does not challenge Stallings' sentencing but rather proceeds upon a question reserved as a matter of statewide interest pursuant to K.S.A. 2006 Supp. 22-3602(b)(3). Stallings subsequently withdrew his appeal, leaving the State's cross-appeal as the only matter currently before us. Based on our statutory law, we sustain the State's cross-appeal.

## STANDARD OF REVIEW

In Kansas, allocution in general is governed by statute. See K.S.A. 22-3422; K.S.A. 22-3424(e). Likewise, the unique sentencing scheme in a death penalty case, which utilizes a jury, is a creature of statute. See K.S.A. 2006 Supp. 21-4624. Interpreting the interplay among the sentencing statutes involves a de novo standard of review. See *State v. Kleypas*, 272 Kan. 894, 977, 40 P.3d 139 (2001) (statutory interpretation subject to de novo review). Moreover, Stallings' constitutional argument does not restrict our review standard.

## CONSTRUCTION RULES

We are guided by well-established rules of statutory construction. The most fundamental rule is that we should ascertain the legislature's intent through the statutory language it employs, giving ordinary words their ordinary meaning. *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006). When a statute is plain and

unambiguous, we are charged with the responsibility to give effect to the legislature's expressed intent, resisting the temptation to determine what the law should or should not be. *Bryan*, 281 Kan. at 159.

Generally, criminal statutes are strictly construed in favor of the accused, and any reasonable doubt about the meaning is decided in favor of the person subjected to the criminal statute. *Kleypas*, 272 Kan. at 977-78. However, this strict construction rule " 'is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent.' " *State v. McCurry*, 279 Kan. 118, 121, 105 P.3d 1247 (2005) (quoting *State v. Cox*, 258 Kan. 557, Syl. ¶ 7, 908 P.2d 603 [1995]).

When several provisions apply to a topic, they " 'must be construed together with a view of reconciling and bringing them into workable harmony if possible.' " *Pieren-Abbott v. Kansas Dept. of Revenue*, 279 Kan. 83, 89, 106 P.3d 492 (2005) (quoting *State v. Huff*, 277 Kan. 195, 203, 83 P.3d 206 [2004]). If the constitutionality of a statute is challenged, we start with a presumption of validity and look for any reasonable way to construe the statute as constitutionally valid. *State v. Brown*, 280 Kan. 898, 899, 127 P.3d 257 (2006).

## THE STATUTES

The Kansas Code of Criminal Procedure addresses a criminal defendant's general right to allocution in two statutes. The first, K.S.A. 22-3422, entitled "Allocution," states:

"When the defendant appears for judgment, he must be informed by *the court* of the verdict of the jury, or the finding of the court and asked whether he has any legal cause to show why judgment should not be rendered. If none is shown *the court* shall pronounce judgment against the defendant." (Emphasis added.)

The second pertinent statutory provision, K.S.A. 22-3424(e), recites:

"Before imposing sentence *the court* shall: (1) Allow the prosecuting attorney to address the court, if the prosecuting attorney so requests; (2) afford counsel an opportunity to speak on behalf of the defendant; (3) allow the victim or such members of the victim's family as the court deems appropriate to address the court, if the victim or the victim's family so requests; and (4) *address the defendant*

*personally and ask the defendant if the defendant wishes to make a statement on the defendant's own behalf and to present any evidence in mitigation of punishment."* (Emphasis added.)

Those general sentencing statutes, which predate our current death penalty laws, clearly state that the defendant has the right to address the court, *i.e.,* the sentencing judge. The obvious reason for providing that the defendant direct his or her remarks to the court is that in noncapital cases the judge decides the sentence to be imposed without any input from the jury.

In contrast, the legislature created a separate jury sentencing procedure for capital murder cases in which the State is seeking the death penalty. K.S.A. 2006 Supp. 21-4624. If a defendant is charged with capital murder, the prosecutor must file a written notice of the State's intent to seek the death penalty. K.S.A. 2006 Supp. 21-4624(a). If a defendant who is at least 18 years old and not mentally retarded is convicted of capital murder, the State can move for a separate sentencing proceeding before a jury to determine whether the defendant shall be sentenced to death. K.S.A. 2006 Supp. 21-4624(b). In that separate proceeding, any evidence the court deems relevant, regardless of admissibility under the rules of evidence, may be presented, including matters related to the aggravating circumstances of K.S.A. 21-4625, which the State has previously identified, and any mitigating circumstances; no testimony by the defendant shall be admissible at any subsequent criminal proceeding. K.S.A. 2006 Supp. 21-4624(c). At the conclusion of the evidence, the district court is to provide the jury with oral and written instructions to guide its deliberations. K.S.A. 2006 Supp. 21-4624(d).

"If, by unanimous vote, the jury finds beyond a reasonable doubt that one or more of the aggravating circumstances enumerated in K.S.A. 21-4625 and amendments thereto exist and, further, that the existence of such aggravating circumstances is not outweighed by any mitigating circumstances which are found to exist, the defendant *shall* be sentenced to death." (Emphasis added.) K.S.A. 2006 Supp. 21-4624(e).

However, notwithstanding the verdict of the jury, the trial court is required to review the jury's death verdict "to ascertain whether the imposition of such sentence is supported by the evidence," and,

if not, "the court shall modify the sentence . . . to life without the possibility of parole, and no sentence of death shall be imposed." K.S.A. 2006 Supp. 21-4624(f). The statute does not mention allocution.

## DISTRICT COURT'S RULING

On appeal, the State inaccurately contends that the district court found Stallings "had a right of allocution in front of the jury . . . without being under oath." However, in its Order Regarding Allocution, the district court recognized that, although it was going to permit Stallings to address the jury regarding the issue of mitigation of punishment, "[t]his is not a right authorized by Kansas law." The court noted that Kansas law recognizes the right of allocution to the sentencing judge, but opined "that right has little meaning in a capital murder case where the jury, not the judge, makes the decision whether to impose the death penalty."

In an apparent attempt to give meaning to Stallings' allocution, while addressing the State's concerns about allowing a defendant to make an unsworn, unchallenged statement to the factfinding jury, the court crafted its own solution. The sentencing court ruled that Stallings' comments would be limited to the issue of mitigation; that he would submit the substance of his statement in writing to the court in advance; that Stallings would be specifically precluded from addressing his dissatisfaction with current or former counsel and the evidence regarding guilt, except for his mental state at the time the killings were committed; that Stallings' noncompliance with the court's requirements would result in termination of his statement; and that Stallings' statement would occur before the attorneys' closing arguments. In discussing the permissible topic of mitigation of punishment, the district court's order specifically referred to the following pattern instruction language:

"Mitigating circumstances are those which in fairness may be considered as extenuating or reducing the degree or moral culpability or blame or which justify a sentence of less than death, even though they do not justify or excuse the offense. *Mercy can itself be a mitigating factor.*" (Emphasis added.)

## STATUTORY AUTHORITY

As the State points out, the general allocution statutes plainly provide the defendant an opportunity to address the sentencing

*court*, not the sentencing *jury*. Likewise, the death penalty sentencing procedure does not establish a right of allocution before the jury, separate and apart from the defendant's right to testify during the evidentiary phase. Stallings invites us to refrain from strictly construing the statutes and to judicially expand the statutory law so as to allow an unsworn, unchallenged statement to the death penalty jury. We decline the invitation.

With respect to allocution before the judge, Stallings declares that right to be meaningless in a death penalty case because the jury has already determined the sentence. That argument is tempered to some extent by K.S.A. 2006 Supp. 21-4624(f), which invests the judge with the final authority to impose the death penalty or to modify it to life without parole. Further, K.S.A. 22-3422, entitled "Allocution," merely gives the defendant an opportunity to answer "whether he has any legal cause to show why judgment should not be rendered." That right to show *legal* cause is effected when the capital murder convict is given an opportunity to address the judge, who is the sole arbiter of legal questions.

However, K.S.A. 22-3424(e) expands a Kansas defendant's right of allocution to include making a statement on his or her own behalf. See *State v. Webb*, 242 Kan. 519, 528, 748 P.2d 875 (1988). Stallings contends that this statutory provision would effect "a very hollow right of allocution" unless the capital murder defendant addresses the statement to the sentencing jury. However, we cannot rewrite that statute to add a death penalty exception in order to give the defendant an allocution opportunity which is more to his liking or even one which is more to our liking. The only way to reach such a construction would be to declare that K.S.A. 22-3424(e) needs to be reconciled and brought into workable harmony with the death penalty sentencing provision, K.S.A. 2006 Supp. 21-4624. However, we decline to manufacture a disharmony where none exists.

The plainly worded statutes actually provided Stallings with the opportunity to make two self-serving statements and presentations of mitigating evidence. During the jury proceedings, K.S.A. 2006 Supp. 21-4624(c) permitted him to present all probative evidence in mitigation, including his own immunized testimony. As the dis-

trict court noted, mercy is a mitigating circumstance, which would make defendant's plea for mercy relevant testimony. Thus, Stallings could have addressed the jury and presented mitigating evidence during the evidentiary phase, as well as addressing the judge prior to the court's formal imposition of sentence.

Granted, this form of "allocution" to the jury from the witness stand requires that the defendant be sworn and subject to cross-examination. Those requirements could arguably have a chilling effect on a defendant's decision to "allocute" before the jury because of fear of the prosecutor's cross-examination. Some might find unacceptable any procedure which hampers or discourages a defendant's opportunity to plead to the jury for his or her own life. However, the legislature is the architect of the death penalty. So long as it stays within constitutional parameters, the legislature is solely responsible for the basic fairness and humanity, or lack thereof, with which the draconian punishment of death is meted out. We must refrain from deciding this case based upon our own perceptions of what the law should be.

In accord, most of the state and federal courts presented with allocution statute language referring to the court and a separate death penalty sentencing provision that is silent on allocution have concluded that a defendant has no statutory right to allocution in front of the death penalty jury. See *United States v. Purkey*, 428 F.3d 738, 761 (8th Cir. 2005) (concluding that the plain language of the federal allocution rule does not grant the right to allocution before a jury); *United States v. Barnette*, 211 F.3d 803, 820 (4th Cir. 2000) (stating that the federal allocution rule did not address allocution before death penalty juries); *United States v. Hall*, 152 F.3d 381, 392-97 (5th Cir. 1998), *cert. denied* 526 U.S. 1117 (1999) (concluding that the text of the federal allocution rule provided no basis for allowing a defendant to make a statement to a death penalty jury); *United States v. Johnson*, 403 F. Supp. 2d 721, 871 (N.D. Iowa 2005) (relying on *Purkey*); *United States v. Johnson*, 136 F. Supp. 2d 553, 566-68 (W.D. Va. 2001) (stating that the death penalty sentencing statute counseled against extending the federal allocution rule to death penalty juries because it set forth with great specificity the type of information to be submitted to the jury);

*People v. Robbins*, 45 Cal. 3d 867, 889-90, 248 Cal. Rptr. 172, 755 P.2d 355 (1988) (finding nothing in the language of the allocution statute that would suggest a legislative intent to allow capital defendants the right of allocution separate from the capital sentencing scheme); *State v. Colon*, 272 Conn. 106, 306, 864 A.2d 666 (2004) (noting that the rule allowing allocution and the death penalty sentencing statutes were both silent regarding a defendant's right to allocution before the death penalty jury and relying on the legislature's specificity for the procedures in the capital sentencing scheme); *People v. Gaines*, 88 Ill. 2d 342, 375-76, 430 N.E.2d 1046 (1981) (noting that the statute was amended to specifically exclude death penalty proceedings); *State v. Whitfield*, 837 S.W.2d 503, 514 (Mo. 1992) (deciding the allocution statute did not extend to death penalty juries without analysis); *State v. Green*, 336 N.C. 142, 192, 443 S.E.2d 14 (1994) (relying on the statutory language, which established a separate statute for death penalty proceedings without incorporating the allocution statute); *Com. v. Abu-Jamal*, 521 Pa. 188, 212, 555 A.2d 846 (1989) (relying on the separation of the death penalty sentencing statutes from the allocution statute); *State v. Stephenson*, 878 S.W.2d 530, 551-52 (Tenn. 1994) (concluding that the language of the allocution statute did not specifically include a right to allocution before death penalty juries); *State v. Young*, 853 P.2d 327, 357-61 (Utah 1993) (concluding that the language of the allocution rule was directed at the procedure of the court and did not include capital sentencing procedures, which were set forth in another statute); *Bassett v. Commonwealth*, 222 Va. 844, 859, 284 S.E.2d 844 (1981) (relying on the language in the allocution statute, which did not address sentencing before a jury, and the separate statute establishing the procedure for death penalty sentencing, which allowed the presentation of evidence but not allocution); but *cf. People v. Borrego*, 774 P.2d 854, 856 (Colo. 1989); *Shelton v. State*, 744 A.2d 465, 495-96 (Del. 1999).

Some jurisdictions have allowed a defendant to make a statement to the jury, despite the absence of statutory authority. See, *e.g., United States v. Wilson*, 493 F. Supp. 2d 515 (E.D. N.Y. 2007) (concluding that there is no statutory or constitutional right to allocution before a death penalty jury but permitting the defendant

to make a statement expressing remorse because it would be unjust to deny the defendant's request); *Homick v. State*, 108 Nev. 127, 133-34, 825 P.2d 600 (1992) (acknowledging *Hardison v. State*, 104 Nev. 530, 763 P.2d 52 [1988], which held that the statutory rights to allocution did not apply in capital cases because of the specific statutory procedures for death penalty sentencing but concluding that capital defendants have a common-law right to allocution); *State v. Zola*, 112 N.J. 384, 428, 548 A.2d 1022 (1988) (stating that the rule requiring allocution before a court did not include capital juries and the rule prescribing the procedures in capital cases did not include allocution before the jury but recognizing a common-law right to allocution before a death penalty jury as long as the defendant's comments do not dispute any facts).

However, our legislature has declared that the provisions of the Kansas Code of Criminal Procedure "shall govern proceedings in all criminal cases in the courts of the state of Kansas." K.S.A. 22-2102. Therefore, we are loath to divine a common-law right or to declare some other right to address a death penalty jury when such would be in direct contravention of the criminal code.

Further, one can intuit a rationale for omitting an allocution to the jury following the presentation of the evidence in a death penalty sentencing. The jury is asked to determine whether the evidence presented supports the finding of one or more aggravating circumstances and then to weigh whether any mitigating circumstances found to exist outweigh the aggravating circumstances. One can perceive that a lay juror might be confused as to how the defendant's unsworn, unchallenged statements should factor into the factfinding calculus, *i.e.*, whether to give such statements equal treatment with the evidence produced from the witness stand.

Even Stallings' brief recognizes the need for "[s]etting parameters [to keep] the capital defendant's statement in line," albeit he does not believe that the defendant must be sworn or subject to cross-examination to effect the needed safeguards. Rather, Stallings suggests that the district court, as it did here, can restrict the content of the capital defendant's statement and screen the proposed statement for any inappropriate comments. While that may true, Stallings does not favor us with an explanation of how we get

to the point of defining the permissible parameters of a capital defendant's statement to the jury without cutting new law completely from whole cloth.

The district court below crafted a commendable compromise of the competing interests of the parties when it permitted Stallings to address the jury, subject to the restrictions and oversight of the presiding judge. However, we must answer the question presented by finding that the court simply did not have the statutory authority to do so.

## CONSTITUTIONAL CONSIDERATIONS

Stallings contends that his right to allocution before the death penalty jury is a constitutional guarantee, both as a matter of due process and of equal protection. We disagree. There is scant support for finding the right of allocution in general to be a constitutional right and even less support for extending that right to addressing the death penalty jury, rather than the sentencing judge.

In *Webb*, Justice Herd explained the historical function and development of allocution. In doing so, he noted that the United States Supreme Court, in *Hill v. United States*, 368 U.S. 424, 428, 7 L. Ed. 2d 417, 82 S. Ct. 468, *reh. denied* 369 U.S. 808 (1962), held that the failure to provide allocution was not grounds for collateral attack because the error was not of jurisdictional or constitutional dimension. 242 Kan. at 524. The United States Supreme Court has not revisited the issue.

Since *Hill*, the Fourth and Ninth Circuits have concluded that denying a defendant's request for allocution before the sentencing court in a noncapital case is a constitutional due process violation. *Boardman v. Estelle*, 957 F.2d 1523, 1530 (9th Cir.), *cert. denied* 506 U.S. 904(1992); *Ashe v. State of N.C.*, 586 F.2d 334, 336 (4th Cir. 1978). However, we are not presented with a question of the complete denial of allocution, but rather with the question of when and before whom the allocution should occur. Pointedly, the Fourth Circuit did not extend its constitutional due process right to allocution to mean that a capital murder defendant is entitled to make an unsworn, unchallenged statement to the death penalty jury. *Barnette*, 211 F.3d 803 (affirming the trial court's denial of a

capital defendant's request to make unsworn statements to the death penalty sentencing jury without subjecting them to cross-examination). Likewise, we conclude that Stallings had no due process right to address the death penalty jury.

Stallings also makes a cursory attempt at mounting an equal protection argument. The substance of his argument is contained in one paragraph, as follows:

"There is no rational basis in allowing non-capital defendant's [*sic*] the right to allocution to the sentencing party but to deny it to capital defendants. If anything, capital defendants deserve a heightened level of scrutiny and constitutional safeguards. Further, any concerns about inappropriate comments to the jury can be alleviated by the parameters and limits discussed herein. Without justification, the differing rights violates the right to Equal Protection."

The first step in analyzing an equal protection claim is to determine the nature of the legislative classification, and if the legislative classification does not target a suspect class or burden a fundamental right, the court applies a rational basis test. See *State v. Limon*, 280 Kan. 275, 284, 122 P.3d 22 (2005). Where Stallings' argument disintegrates is that, with respect to allocution, the Kansas Legislature has not created different classes. All convicted persons are treated equally in that they all have the right to allocute before the sentencing judge.

Stallings does not complain about the legislative classification whereby a capital murder defendant is entitled to a jury determination on the death penalty, whereas a noncapital defendant has no entitlement to jury input on sentencing. Thus, what Stallings actually wants is for us to interpret the general allocution statutes to *create* a legislative classification that will treat capital murder defendants differently. We find no merit in Stallings' cursory equal protection claim. Accord *Gaines*, 88 Ill. 2d at 380 (rejecting a capital defendant's claim that the denial of allocution before a death penalty jury violated his right to equal protection); see also *Colon*, 272 Conn. at 315 (rejecting a capital defendant's claim that the denial of allocution before a death penalty jury violated equal protection); *People v. Kokoraleis*, 132 Ill. 2d 235, 280-82, 547 N.E.2d 202 (1989); *People v. Christiansen*, 116 Ill. 2d 96, 128-29, 506

N.E.2d 1253 (1987) (rejecting the equal protection claim for capital defendants seeking allocution before a death penalty jury).

*CONCLUSION*

Our statutes provide that a capital murder defendant has the right of allocution before the sentencing judge. Our statutes do not provide a mechanism for a capital murder defendant to make an unsworn, unchallenged statement to the death penalty jury. The legislature bears sole responsibility for allowing or denying the opportunity for a capital murder defendant to plead to the death penalty jury to spare his or her life. There is no common-law or other right which overrides the legislative prescription of criminal procedure. Our statutory scheme does not violate a capital murder defendant's constitutional rights. The State's cross-appeal must be sustained.

Cross-appeal sustained.

ROSEN, J., dissenting: I respectfully dissent from the majority opinion, which excludes allocution before a death penalty sentencing jury from the statutory right to allocution. My dissent does not seek to privilege allocution in a capital case. Rather, I believe that allocution in capital cases should be given the same meaningful status as all other allocutory statements authorized by our Code of Criminal Procedure. My disagreement with the analysis in the majority opinion lies with its definition of the term "court" as used in K.S.A. 22-3424(e). The majority has narrowly interpreted the term "court" to mean the sentencing judge. However, other statutes in the Kansas Code of Criminal Procedure require a broader definition of the term "court" that includes the sentencing jury as well as the sentencing judge.

K.S.A. 22-2201 provides direction for interpreting the meaning of words found in the Kansas Code of Criminal Procedure, stating:

"(1) In interpreting this code, such words and phrases as are defined in this article shall be given the meanings indicated by their definitions, unless a particular context clearly requires a different meaning.

"(2) Words or phrases not defined in this code but which are defined in the Kansas criminal code shall have the meanings given therein except when a particular context clearly requires different meanings.

"(3) Words and phrases used in this code and not expressly defined shall be construed according to the rules governing the construction of statutes of this state."

Although the term "court" is not defined in the Kansas Code of Criminal Procedure, it is defined in the Kansas Criminal Code, K.S.A. 21-3101 *et seq.* K.S.A. 2006 Supp. 21-4602 provides: "(a) 'Court' means any court having jurisdiction and power to sentence offenders for violations of the laws of this state."

Pursuant to K.S.A. 22-2201(2), the definition of "court" in K.S.A. 2006 Supp. 21-4602 applies to the term as it is used in K.S.A. 22-3424(e). The particular context of K.S.A. 22-3424(e) does not require a different meaning than that given in K.S.A. 21-4602. Under the death penalty sentencing statute, the legislature gave the jury the power to sentence defendants convicted of capital murder. K.S.A. 2006 Supp. 21-4624(e). Thus, the term "court" as used in K.S.A. 22-3424(e) includes the jury in a death penalty sentencing proceeding because the jury has the jurisdiction and power to sentence offenders for capital murder. Although the majority's definition of "sentencing judge" is appropriate for defendants convicted of any crime other than capital murder, its narrow definition fails to harmonize the statutory definition of the term "court" with the authority given to juries in the death penalty sentencing scheme.

K.S.A. 22-3424(e) states:

"Before imposing sentence the court shall: (1) Allow the prosecuting attorney to address the court, if the prosecuting attorney so requests; (2) afford counsel an opportunity to speak on behalf of the defendant; (3) allow the victim or such members of the victim's family as the court deems appropriate to address the court, if the victim or the victim's family so requests; and (4) address the defendant personally and ask the defendant if the defendant wishes to make a statement on the defendant's own behalf and to present any evidence in mitigation of punishment."

When the term "court" in K.S.A. 22-3424(e) is interpreted in accordance with K.S.A. 22-2201(2) and K.S.A. 2006 Supp. 21-4602, it is clear that the legislature intended to allow allocution for all defendants, including those whose sentences are determined by a jury rather than a judge. The statutory right to allocution was es-

tablished in 1970 prior to the enactment of the death penalty sentencing scheme. See L. 1970, ch. 129, sec. 22-3424; L. 1990, ch. 99, sec. 4. At that time, the district court judge was the sole authority vested with the power to determine a defendant's sentence and pronounce judgment against the defendant. When the legislature enacted the death penalty sentencing law in 1990, it did not demonstrate any intent to abrogate the defendant's statutory right to allocution before the defendant's sentence had been determined by the sentencing authority. Rather, the legislature provided a broad enough definition of the term "court" in K.S.A. 2006 Supp. 21-4602(a) to sufficiently incorporate the death penalty sentencing jury in the statutory right to allocution as set forth in K.S.A. 22-3424(e). Thus, interpreting the term "court" as used in K.S.A. 22-3424(e) to include both sentencing judges and sentencing juries maintains the statutory right to allocution as it was initially intended by our legislature.

In addition, such an interpretation harmonizes K.S.A. 2006 Supp. 21-4624(b), which authorizes capital defendants to waive the death penalty jury, with K.S.A. 2006 Supp. 21-4624(e), thereby giving all capital defendants an equal opportunity for allocution prior to the determination of their sentences regardless of whether they choose to be sentenced by a judge or a jury. Although the majority recognizes that statutes " ' "must be construed together with a view of reconciling and bringing them into workable harmony, if possible," ' " *Pieren-Abbott v Kansas Dept. of Revenue*, 279 Kan. 83, 89, 106 P.3d 492 (2005), its interpretation of the statutory right to allocution does not harmonize K.S.A. 2006 Supp. 21-4624(b) with K.S.A. 2006 Supp. 21-4624(e). Such harmony requires that if a capital defendant is entitled to allocution before a sentencing judge, he or she is entitled to the same right before a sentencing jury.

The right of allocution is the right to speak unedited words that pass directly from the lips of the defendant to the ears, mind, and heart of the sentencing authority, whether it be a judge or jury. Restricting allocution to a sentencing judge and not a sentencing jury creates a confusing and irrational double standard. The majority maintains that there is no disharmony. However, a clear dou-

ble standard exists when a judge can hear certain allocutory statements before making a sentencing decision, while a sentencing jury charged with exactly the same responsibility may not consider such statements in their decision making process. "[C]onsistent decision-making is impossible when one decisionmaker may consider information forbidden to another." *McGautha v. California*, 402 U.S. 183, 294, 28 L. Ed. 2d 711, 91 S. Ct. 1454 (1971) (Brennan, J., dissenting).

The timing of allocution is crucial. If it is to be an authentic, meaningful factor in the sentencing procedure, it must occur before the nature of the sentence has hardened into a fixed immutability. Anything after such hardening is a cruel sham. If a jury has the authority to determine the defendant's sentence, the defendant must have the opportunity to make his or her plea for mercy to the jury before it determines his or her sentence. Allocution in a capital sentencing scheme after the jury has returned its verdict on sentencing is a meaningless formality—"no more than an empty gesture." *Tomlinson v. State*, 98 N.M. 213, 215, 647 P.2d 415 (1982) (invalidating the defendant's sentence for kidnapping and armed robbery because the sentencing judge did not give the defendant an opportunity for allocution prior to imposing sentence).

The majority tempers this concern by noting that K.S.A. 2006 Supp. 21-4624(f) gives the judge the final authority for imposing the capital defendant's sentence and K.S.A. 22-3424(e) gives a capital offender an opportunity to allocute before the judge pronounces sentence. However, K.S.A. 2006 Supp. 21-4624(f) does not give the judge discretion to consider the defendant's plea in mitigation. K.S.A. 2006 Supp. 21-4624(f) provides:

"Notwithstanding the verdict of the jury, the trial court shall review any jury verdict imposing a sentence of death hereunder to ascertain whether the imposition of such sentence is supported by the evidence. If the court determines that the imposition of such a sentence is not supported by the evidence, the court shall modify the sentence and sentence the defendant to life without the possibility of parole, and no sentence of death shall be imposed hereunder. Whenever the court enters a judgment modifying the sentencing verdict of the jury, the court shall set forth its reasons for so doing in a written memorandum which shall become part of the record."

This statute only gives the judge discretion in determining whether the jury's imposition of the death penalty is supported by the evidence. It does not allow the judge to consider additional mitigating circumstances or the defendant's plea for mercy pursuant to K.S.A. 22-3424(e) because it does not authorize the judge to reweigh the aggravating and mitigating factors. If the judge finds that the evidence supports the jury's verdict, it must sentence the offender to death. See K.S.A. 2006 Supp. 21-4624(e) (stating that the defendant shall be sentenced to death if the jury finds the aggravating circumstances are not outweighed by the mitigating circumstances). Allowing a capital defendant an opportunity for allocution before the judge pronounces his or her sentence is not the equivalent of allowing the capital defendant an opportunity for allocution before the death penalty jury. Rather, "that form of allocution [is] merely vestigial: since the jury's verdict [has] fixed the sentence of death, the defendant's speech before a judge would be but a hollow ritual." *State v. Zola*, 112 N.J. 384, 429, 548 A.2d 1022 (1988).

Death penalty jurisprudence further supports broadly construing "court" in K.S.A. 22-3424 to include the sentencing jury in a death penalty case. According to the United States Supreme Court:

"Death is a different kind of punishment from any other which may be imposed in this country. . . . From the point of view of the defendant, it is different in both its severity and its finality. From the point of view of society, the action of the sovereign in taking the life of one of its citizens also differs dramatically from any other legitimate state action. It is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion." *Beck v. Alabama*, 447 U.S. 625, 637-38, 65 L. Ed. 2d 392, 100 S. Ct. 2382 (1980) (invalidating a statute that prevented the court from instructing the jury on lesser included crimes if the defendant was charged with capital murder, and quoting *Gardner v. Florida*, 430 U.S. 349, 357-58, 51 L. Ed. 2d 393, 97 S. Ct. 1197 [1977]).

Because death is different than any other sentence that may be imposed, it is incongruent to allow a defendant to address the sentencing authority prior to the determination of his or her sentence when lesser sentences are involved while denying the same right for the severest of all punishments. The *Zola* court aptly acknowledged this underlying rationale when it stated:

"The question for us is not what the Constitution commands, but what our civilization commends. Under our system of capital punishment, a jury of men and women forms the essential link between society and the defendant before the court. Each capital jury expresses the collective voice of society in making the individualized determination that a defendant shall live or die. Whatever the Constitution permits, it bespeaks our common humanity that a defendant not be sentenced to death by a jury 'which never heard the sound of his voice.'" *Zola*, 112 N.J. at 429-30 (quoting *McGautha*, 402 U.S. at 220).

This basic principle of common humanity applies regardless of the nature of the crime or character of the defendant on trial. Perpetrators of some of humanity's most heinous atrocities, notably the 11 Nuremberg defendants who participated in the murder of millions of innocent, powerless victims, were given an opportunity to make unsworn statements to the tribunal prior to sentencing. *Charter of the Nuremberg International Military Tribunal*, Section V, Article 24(j) (1945). Such a right was afforded to Herman Goering, Rudolph Hess, Albert Speer, and in current times to Saddam Hussein (*Iraqi Code of Criminal Procedure* [1969]) (at sentencing phase, right to submit statements is generally in writing but can also be oral). It is scarcely imaginable that these mass murderers should possess legal rights not available in Kansas to those defendants prosecuted under our capital murder statutes. Interpreting the term "court" in K.S.A. 22-3424(e) to include the sentencing jury dismisses any notion that Kansas law is willing to degrade common humanity to the point of denying those convicted of capital murder the opportunity to plead for mercy before their sentencers. Indeed, this interpretation comports with the legislature's intention to treat persons convicted of crimes justly and "in accordance with their individual characteristics, circumstances, needs, and potentialities." K.S.A. 21-4601, K.S.A. 22-2103.

"The need for treating each defendant in a capital case with that degree of respect due the uniqueness of the individual is far more important than in noncapital cases. A variety of flexible techniques—probation, parole, work furloughs, to name a few—and various postconviction remedies, may be available to modify an initial sentence of confinement in noncapital cases. The nonavailability of corrective or modifying mechanisms with respect to an executed capital sentence underscores the need for individualized consideration as a constitutional requirement in imposing the death sentence." *Lockett v. Ohio*, 438 U.S. 586, 605, 57 L. Ed. 2d 973, 98 S. Ct. 2954 (1978).

The majority rationalizes its decision by presuming that jurors would be confused by the defendant's unsworn, unchallenged statements. I disagree. The United States Supreme Court has entrusted juries with the responsibility of making death penalty sentencing decisions. See, *e.g., Caldwell v. Mississippi*, 472 U.S. 320, 341, 86 L. Ed. 2d 231, 105 S. Ct. 2633 (1985); *Gregg v. Georgia*, 428 U.S. 153, 49 L. Ed. 2d 859, 96 S. Ct. 2909 (1976); *Jurek v. Texas*, 428 U.S. 262, 49 L. Ed. 2d 929, 96 S. Ct. 2950 (1976); *McGautha v. California*, 402 U.S. 183. The *McGautha* Court specifically noted that

"one of the most important functions any jury can perform in making such a selection is to maintain a link between contemporary community values and the penal system—a link without which the determination of punishment could hardly reflect 'the evolving standards of decency that mark the progress of a maturing society.'" *McGautha*, 402 U.S. at 202 (quoting *Witherspoon v. Illinois*, 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770 [1968], and *Trop v. Dulles*, 356 U.S. 86, 101, 2 L. Ed. 2d 630, 78 S. Ct. 590 [1958]).

The United States Supreme Court further expressed its confidence in juries by requiring them, rather than judges, to balance mitigating and aggravating factors related to sentence enhancement. See, *e.g., Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). In that transferral of the function of sentencing from judge to jury, surely the Court did not envision any selective restriction of the material that such juries would be allowed to hear based on their status as "lay" jurors. "In the face of the State's forceful pleas in favor of the death penalty, it is difficult . . . to accept the argument that the briefest statement by the defendant would inject a fatal emotionalism into the jury's deliberations." *State v. Zola* 112 N.J. 384, 431, 548 A.2d 1022 (1988).

The legislature has empowered jurors to make life and death decisions. See K.S.A. 2006 Supp. 21-4624(e). We should uphold a process that provides sentencing juries with the same opportunity for receiving relevant information given to sentencing judges. In order to have the capacity to raise this issue, defendants stand convicted of capital crimes that have caused overwhelming suffering and pain. However, their assaults on human life should not be compounded by any resultant diminution of the principles of fair

and humane justice. By interpreting the term "court" in K.S.A. 22-3424(e) to include sentencing juries in accordance with the definition found in K.S.A. 21-4602(a) and the interpretive direction provided by K.S.A. 22-2201, we preserve the legislature's intent to allow all defendants an opportunity for allocution prior to the determination of their sentences.

DAVIS, J., joins in the foregoing dissent.