NOT DESIGNATED FOR PUBLICATION'

No. 116,350

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRENT O. ANNO,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; WARREN M. WILBERT, judge. Opinion filed September 8, 2017. Sentence vacated and case remanded with directions.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before PIERRON, P.J., GREEN and HILL, JJ.

PER CURIAM:  On September 9, 2015, the State charged Brent Anno with one count of rape under K.S.A. 2015 Supp. 21-5503(a)(3), and one count of aggravated criminal sodomy under K.S.A. 2015 Supp. 21-5504(b)(1). The following facts leading up to these charges are taken from the probable cause affidavit and Anno's sex offender evaluation.

Anno, age 18, met M.A.M., age 13, while playing online video games on the Xbox platform. M.A.M. asked Anno, who lived in Texas, to come to her home in Derby,

1

Kansas, because her parents were abusing her. In April 2015, Anno had a family member drive him to Kansas with the understanding that he was going to live with a girlfriend and get his life together. M.A.M.'s parents allowed Anno to live with them briefly, under the impression that he was 16 years old. When M.A.M.'s parents found out he was actually 18, they kicked him out of their house immediately. Anno spent several months living with friends before M.A.M. allowed him to move back into her home without her parents' knowledge. He lived in M.A.M.'s bedroom for approximately three weeks, hiding in her closet whenever her parents came into her room. One day, M.A.M.'s mother found Anno hiding in M.A.M.'s closet. He ran from the house, but police apprehended him a short time later. During Anno's time in Kansas, he and M.A.M. regularly engaged in sexual acts.

Anno pled guilty as charged on May 23, 2016. At the plea hearing, the State recited the terms of the plea agreement. In exchange for Anno's guilty plea, the State agreed to recommend that the district court depart downward to the grid, impose the mid number for each count, and run the sentences consecutively. The State listed the following reasons for substantial and compelling bases for the departure: (1) Anno's lack of criminal history; (2) Anno's age; (3) the plea agreement would spare M.A.M. from having to testify; and (4) the agreed term of confinement was essentially a 25-year determinate sentence. Anno was free to seek a further departure as limited by statute.

The district court held a sentencing hearing on July 6, 2016, set to begin at 9 a.m. At the hearing, the parties entered their appearances, and the district court recounted that Anno had pled guilty to two charges. The court said a review of the presentence investigation (PSI) report showed Anno's criminal history was not scored, and the criminal history worksheet, "instead of no, it says prior record and then there is nothing attached." On the face sheet of the PSI report, no criminal history score was indicated. On the criminal history score worksheet, the box next to prior record was checked, but at the bottom of the sheet it said "No prior criminal record located." The worksheet indicated

his criminal history score was I. Both attorneys told the court they expected Anno's criminal history score would be I.

The district court explained Anno's offenses were off grid, calling for a term of life, with no parole eligibility for 25 years. The judge then stated, "I guess for purposes of the record I will just tell everybody I'm not departing to the grid. I don't know if I need to determine criminal history. It's off grid." The court asked if there was any legal reason not to proceed to sentencing, and both parties said "No."

The district court asked the State for its recommendations, and the State responded that it "would just ask the Court to adopt the recommendations in the plea agreement as your own." The State noted that there were 306 days of jail credit and no restitution. It also added that M.A.M.'s family agreed with the State's recommendations.

The district court then asked Anno's counsel if she had filed a motion for a durational departure. The record shows a departure motion was filed at 9:06 a.m. on the day of the hearing. In that motion Anno set forth the following mitigating circumstances which he argued rose to the level of substantial and compelling reasons to depart: (1) His guilty plea demonstrated acceptance of responsibility and spared the court system the time and expense of trying him; (2) he had no prior criminal history; and (3) he was a good candidate for sex offender treatment. The court allowed Anno's counsel to argue that motion and anything else she might want to add.

Anno's counsel argued Anno had taken responsibility for his actions, cooperated with the police, and understood that his behavior was wrong. She explained that while Anno was older than M.A.M., the two were in a romantic relationship and he had not forced himself on her. She added that Anno was young and he was amenable to treatment according to his sex offender evaluation. She asked the court to depart further than the plea agreement and sentence Anno to the mid number in the appropriate grid box. The

court asked Anno if he had anything he would like to say, and Anno responded he did not.

The district judge explained his sentencing decision as follows:

"Well, Mr. Anno was 18 and the victim was 13, way under the age of consent, and, further, meets the requirement of Jessica's Law for 14 years and younger, under the age of 14. His description of the events to Dr. Nystrom indicates that, as bizarre as this was, that these people took him in and he came up here from Texas, but once they found out he was 18, they kicked him out of the house, and, instead, after surviving with the help of some friends he met, for a month or so he snuck back in and lives in the closet for three weeks and engages in very frequent and numerous sexual acts with that 13-year-old during that three-week period.

"While he may not have recognized or fully appreciated the severity of his actions, he did indicate to the police officer that he knew it was wrong—maybe not how wrong, but he knew it was wrong.

"The plea agreement to depart to the grid contemplates a sentence of 25 years with good-time credit which does give him a definite out date. The life sentence with a hard 25 would make him serve 25 years, but, quite frankly, after serving those 25 years, it would not surprise me if the parole board granted him a parole, given the nature of the offense and the participation with the victim and that there's other murderers and forcible rapists and other people that prisons are designed to keep, but beyond that 25 years—but I just cannot depart. This is a 13-year-old, way under age.

"I don't know what the defendant was thinking when he decided to come up from Texas and have sex with this 13-year-old."

The district court found that the primary offense was the rape count, "calling for a term of life with a hard 25 and post-release supervision for the duration of his natural life, along with electronic monitoring." The court then stated, "It will be the order, judgment and sentence of this Court that you be remanded to the custody of the Secretary of Corrections for a [term] of life with a hard 25 for Counts 1 and 2." The court ordered the terms to run concurrently "with parole eligibility in 25 years." The court added Anno was

4

not eligible for good time credit and his first parole hearing would be in 25 years. Anno appeals.

For the first time on appeal, Anno argues the district court violated K.S.A. 22-3424(e) and his due process rights because it imposed a sentence without giving him an opportunity for a hearing. The State counters that the court did not impose sentence until after it gave Anno a chance for allocution. It further contends Anno's argument is without merit because there is no constitutional due process right to allocution.

Anno asserts we may hear this issue for the first time on appeal because it involves only (1) the interpretation of K.S.A. 22-3424(e) and the facts are not in dispute; and (2) his fundamental right to due process at sentencing. Interpretation of a statute is a question of law over which we have unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015). Whether a defendant's constitutional right to due process has been violated is also a question of law subject to de novo review. *State v. Phillips*, 289 Kan. 28, 32, 210 P.3d 93 (2009).

K.S.A. 22-3424(e) provides that:

"Before imposing sentence the court shall: (1) Allow the prosecuting attorney to address the court, if the prosecuting attorney so requests; (2) afford counsel an opportunity to speak on behalf of the defendant; (3) allow the victim or such members of the victim's family as the court deems appropriate to address the court, if the victim or the victim's family so requests; and (4) address the defendant personally and ask the defendant if the defendant wishes to make a statement on the defendant's own behalf and to present any evidence in mitigation of punishment."

Defendants have a statutory right to allocution under K.S.A. 22-3424(e)(4). See *State v. Mebane*, 278 Kan. 131, 134, 91 P.3d 1175 (2004); *State v. Webb*, 242 Kan. 519, 522-29, 748 P.2d 875 (1988) (providing detailed history of function and development of

allocution). Failure to provide a defendant an opportunity for allocution under K.S.A. 22-3424(e)(4) does not result in an error of constitutional magnitude. See *State v. Haney*, 299 Kan. 256, 261-62, 323 P.3d 164 (2014) (applying harmless error analysis for violation of statutory rights for failure to comply with K.S.A. 22-3424[e][4]).

The State contends that Anno's argument fails because imposition of the sentence did not occur when he says it did. Anno claims the district judge imposed the sentence at the beginning of the hearing when the judge stated, "I guess for purposes of the record I will just tell everybody I'm not departing to the grid." The State asserts the court did not impose sentence until the end of the hearing when it specifically stated it was sentencing Anno to a hard 25 for both counts.

There is merit to the State's assertion. "A district court sentences a defendant when it orally pronounces punishment and other terms and conditions associated with the disposition of the crime of conviction from the bench." *State v. Simmons*, 50 Kan. App. 2d 448, 458, 329 P.3d 523 (2014); see also *Abasolo v. State*, 284 Kan. 299, 303, 160 P.3d 471 (2007) (holding "sentencing occurs when the defendant appears in open court and the judge orally states the terms of the sentence"). When the district court stated at the beginning of the hearing that it was not going to depart, it did not pronounce Anno's punishment or any associated terms or conditions. The court did not orally state the terms of Anno's sentence until the end of the hearing. Thus, the court did not impose Anno's sentence until the conclusion of the sentencing hearing, after it had given the State, Anno's attorney, and Anno the opportunity to address the court. Accordingly, the court did not violate Anno's statutory rights under K.S.A. 22-3424(e). Similarly, Anno's general due process argument must fail if the court did not impose his sentence until the conclusion of the hearing.

Because this issue can be resolved based on interpretation of K.S.A. 22-3424(e), it is unnecessary for us to reach Anno's general due process argument. "Appellate courts

6

generally avoid making unnecessary constitutional decisions. Thus, where there is a valid alternative ground for relief, an appellate court need not reach a constitutional challenge." *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, Syl. ¶ 3, 367 P.3d 282 (2016). It may be worth noting, however, that there does not appear to be a general constitutional right to allocution. In *Hill v. United States*, 368 U.S. 424, 428, 82 S. Ct. 468, 7 L. Ed. 2d 417 (1962), the United States Supreme Court held that failure to provide allocution was not grounds for collateral attack because the error was neither jurisdictional nor constitutional in nature. See also, *United States v. Bustamante-Conchas*, 850 F.3d 1130, 1135 (10th Cir. 2017) (noting federal right to allocution is statutory right based on common law principles). In line with *Hill*, the Kansas Supreme Court has declined to find a due process right to allocution. *State v. Stallings*, 284 Kan. 741, 750, 163 P.3d 1232 (2007).

The Kansas Supreme Court has held that a sentencing court must provide a defendant the opportunity to deny or explain information considered in determining the appropriate sentence in order to comport with due process requirements. See *State v. Scales*, 261 Kan. 734, 739, 933 P.2d 737 (1997). At first blush, this holding appears inconsistent with later findings that a defendant does not have a due process right to allocution. The due process requirement recognized in *Scales*, however, seems more concerned with a defendant's right to have access to and an ability to challenge information used by the court in sentencing rather than a defendant's right to address the court and provide evidence in support of mitigation. See, e.g., 261 Kan. at 740 (finding due process violation when information used at sentencing was subject of ex parte communication with judge); *State v. Buckland*, 245 Kan. 132, 142, 777 P.2d 745 (1989) (finding defendant's absence at a hearing on a motion to modify sentence at which the State was represented violated due process); *State v. Grantom*, 229 Kan. 517, 520, 625 P.2d 499 (1981) (finding defendant's counsel's possession of presentence investigation report met due process requirements).

7

Anno next argues the district court abused its discretion in denying his request for a departure. The court sentenced Anno under K.S.A. 2015 Supp. 21-6627, commonly known as Jessica's Law. We review a district court's decision whether to grant a departure sentence under Jessica's Law for an abuse of discretion. See *State v. Ballard*, 289 Kan. 1000, 1007-08, 218 P.3d 432 (2009). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the district court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

Anno provides three alternative arguments as to how the district court abused its discretion. First, he argues the court failed to exercise discretion in this case. A court abuses its discretion if it "'issue[s] a "blanket ruling" that disposes of a discretionary determination automatically without analyzing the factors that would enter into the discretionary decision.'" *State v. Stewart*, 306 Kan. 237, 262, 393 P.3d 1031 (2017). The record indicates the district court did not fail to exercise its discretion. In reaching its decision on Anno's sentence, the court referenced facts specific to Anno's case, such as his age, M.A.M.'s age, his awareness of the criminality of his acts, and the length of his proposed departure sentence. As such, its decision did not automatically dispose of its discretionary determination without analyzing relevant factors.

Anno next argues the district court abused its discretion by failing to follow the proper procedure for evaluating a defendant's departure motion as recognized in *State v. Jolly*, 301 Kan. 313, Syl. ¶ 5, 342 P.3d 935 (2015). "Failure to follow the statutory method for considering a departure from a Jessica's Law [sentence] is an error of law and constitutes an abuse of discretion." *State v. Powell*, 53 Kan. App. 2d 758, 762, 393 P.3d 174 (2017).

Under K.S.A. 2015 Supp. 21-6627(a), with limited exceptions, the district court must sentence a defendant who is 18 years or older and convicted of rape or aggravated

criminal sodomy to life in prison with no possibility of parole for 25 years. The court has the discretion to impose a shorter sentence only if it "finds substantial and compelling reasons, following a review of mitigating circumstances." K.S.A. 2015 Supp. 21-6627(d)(1). The statute includes a nonexclusive list of six mitigating factors for departure. K.S.A. 2015 Supp. 21-6627(d)(2).

In *Jolly*, our Supreme Court identified a step-by-step procedure a sentencing court must follow when analyzing departure motions in Jessica's Law cases:

> "The proper statutory method when considering a departure from a Jessica's Law sentence is for the sentencing court first to review the mitigating circumstances without any attempt to weigh them against any aggravating circumstances. Then, in considering the facts of the case, the court determines whether the mitigating circumstances rise to the level of substantial and compelling reasons to depart from the otherwise mandatory sentence. Finally, if substantial and compelling reasons are found for a departure to a sentence within the appropriate sentencing guidelines, the sentencing court must state on the record those substantial and compelling reasons." 301 Kan. 313, Syl. ¶ 5.

Applying *Jolly*, then, a sentencing court must follow a two-step process when determining departure motions: "(1) determine whether any mitigating circumstances exist (without regard to the existence of aggravating circumstances), and (2) to the extent mitigating factors do exist, determine whether they give rise to substantial and compelling reasons to depart given the facts of the case." *State v. Pulley*, No. 112,631, 2015 WL 5750477, at *4 (Kan. App. 2015) (unpublished opinion). As for the second step, the Kansas Supreme Court has explained:

> "While K.S.A. 21-4643(d) does not allow a weighing of aggravating factors against mitigating factors, the facts of the case—including any egregious ones—are essential for a judge to consider in deciding if a departure is warranted based on substantial and compelling reasons. Simply stated, a judge does not sentence in a vacuum. The sentencing judge is to consider information that reasonably might bear on

9

the proper sentence for a particular defendant, given the crime committed, including the manner or way in which an offender carried out the crime. This includes those 'circumstances inherent in the crime and the prescribed sentence.'" *Jolly*, 301 Kan. at 323-24.

While a district court does not necessarily need to enumerate all mitigating factors considered, a review of caselaw demonstrates the record must be clear that the district court first reviewed any mitigating circumstances without weighing them against aggravating circumstances. See, e.g., *Powell*, 53 Kan. App. 2d at 762 (vacating Jessica's Law sentence and remanding for resentencing because district court only generally considered all factors and did not indicate it followed the method in *Jolly*); *State v. Sullivan*, No. 114,369, 2016 WL 4413563, at *2-3 (Kan. App. 2016) (unpublished opinion) (vacating and remanding Jessica's Law sentence because district court only generally considered all factors and did not indicate it followed the method in *Jolly*); *State v. Cook*, No. 113,768, 2016 WL 2609640, at *3 (Kan. App. 2016) (unpublished opinion) (finding district court's statement that it found no substantial and compelling reasons to depart based on what was presented at hearing was sufficient to satisfy *Jolly*), *rev. denied* June 20, 2017.

In support of his argument that the district court did not comply with *Jolly*, Anno cites *State v. Albanil-Alvarado*, No. 111,802, 2015 WL 5311922 (Kan. App. 2015) (unpublished opinion). In *Albanil-Alvarado*, the court found that the district court abused its discretion by not following the two-step *Jolly* procedure when it denied the defendant's departure motion. 2015 WL 5311922, at *2. In that case, the district court explained its decision to deny the departure as follows:

> "'I certainly understand the process that a defendant, any defendant, under certain plea situations can ask for a departure. And you have done so and you have cited the appropriate aspects of departure reasons that you could. The court has reviewed those and reviewed the evaluation, and as you said in the evaluation, there's some good and bad. It's

not, in a sense, zero chance of re-offending, it's not like you talked about, he probably could have gone somewhere and it would have been the best evaluations ever, but it is an appropriate and honest evaluation I believe as well.

> "'The court is concerned on any case like this—and Ms. Tatum mentioned a couple of the things the court is most concerned with—and that is the number of charges, three victims. I know several charges were dismissed and a case was dismissed so there are multiple offenses. In looking at the affidavit, the ages of the victims at the time—and I may be off half a year—were 12, 14 and 15. Understand what you said about the age of consent in Mexico, but I am—this court is geared towards the idea that most people understand that you just simply cannot have even consensual sex with a 12 year old, let alone several times and then with a 14 or 15 year old as well.

> "'I really can't justify a sentence less than the life sentence with possibility of parole after 25 years. I certainly agree with your comments about his age. It's very sad that this gentleman may spend as long as he is old before he's eligible for parole, and that is a sad commentary. However, these are very, very serious offenses and the court simply feels that a downward departure is not the correct process in this matter.'" 2015 WL 5311922, at *1-2.

Based on this statement from the district court, the *Albanil-Alvarado* court found it was "unable to identify a point at which the district court 'first . . . review[ed] the mitigating circumstances without any attempt to weigh them against any aggravating circumstances.'" 2015 WL 5311922, at *2 (quoting *Jolly*, 301 Kan. 313, Syl. ¶ 5). The *Albanil-Alvarado* court explained that the district court's analysis had "immediately moved on to consider the age of the victims and the seriousness of the offenses—both factors that are part of the reason the Jessica's Law sentences are so severe to begin with: These are serious offenses against particularly young and vulnerable victims." 2015 WL 5311922, at *2.

The same is true in this case. First, the district court began the hearing by announcing it would not depart, even though it had not heard the mitigating circumstances Anno was relying on in requesting his departure. Then, the district court

began its sentencing by referencing M.A.M.'s age and Anno's awareness of the criminality of his conduct. There is no point in the record at which the district court first considered the mitigating circumstances without any attempt to weigh them against aggravating factors. Because the court failed to do so in this case, it abused its discretion, and Anno's sentence must be vacated and the case remanded for resentencing.

The State argues the district court complied with the two-step *Jolly* procedure because it reviewed mitigating circumstances and did not reference aggravating factors. The district court's statement, however, does not clearly identify any mitigating circumstances. Anno and the State are left to argue whether the court intended certain findings to be mitigating or aggravating factors. For example, Anno characterizes the court's statement regarding his capacity to understand that what he was doing was wrong as an aggravating factor, while the State claims the court intended it to be a mitigating circumstance. Thus, the record is at best ambiguous as to whether the court properly considered Anno's mitigating circumstances. See *Pulley*, 2015 WL 5750477, at *5 ("At best, the record is ambiguous as to when the district court completed its determination as to the existence of mitigating factors.").

Additionally, while we may look to a district court's use of the term aggravating factor in determining whether that court complied with *Jolly*, this is not dispositive. See, e.g., *State v. McCormick*, 305 Kan. 43, 46, 50-51, 378 P.3d 543 (2016) (noting district court's use of the term "aggravating factor" implied court had not complied with *Jolly*); *Albanil-Alvarado*, 2015 WL 5311922, at *2 (finding district court abused its discretion even though it never used the term aggravating factor).

The State alternatively argues *Jolly* was wrongly decided. Regardless of whether this argument has merit or not, we are duty bound to follow Kansas Supreme Court precedent, absent some indication the Supreme Court is departing from its previous position. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). The State

only notes that in *McCormick*, the three dissenting justices were critical of the *Jolly* opinion. See 305 Kan. at 51-54 (Stegall, J., dissenting). The *McCormick* majority, however, reaffirmed the holding in *Jolly*. 305 Kan. at 50-51.

Anno also requests that we order his sentencing be assigned to a different judge. In support of this request, he cites to *State v. One 1995 Chevrolet Caprice Classic/Impala SS*, 53 Kan. App. 2d 35, 382 P.3d 476 (2016). In that case, the court took the "unusual action" of remanding to a different judge because the previous judge's decision "does not appear to have been the result of mere oversight or error but instead appears to reflect its intentional practice of conducting . . . proceedings free from the constraints of the governing laws." 53 Kan. App. 2d at 42. The record in this case, however, does not demonstrate that the district court's error was intentional or the result of a blatant disregard for controlling law. Thus, this action is not necessary.

Since we find the district court failed to comply with *Jolly*, it is not necessary to reach Anno's last abuse of discretion argument which is whether the district court abused its discretion when it denied Anno's request for a downward departure.

The record in this case does not indicate the district court complied with the *Jolly* procedure when it denied Anno's request for a departure. His sentence is vacated and the case is remanded for resentencing consistent with this opinion. Anno's other arguments are without merit.

Sentence vacated and case remanded for resentencing with directions.